**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 15 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

No. 99-2166

WILLIAM MCCALL,

Defendant-Appellee.

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CV-95-846M)**

Thomas M. Bondy, Appellate Staff Attorney, Civil Division, Department of Justice, Washington D.C. (David W. Ogden, Acting Assistant Attorney General, Washington D.C., John J. Kelly, United States Attorney, New Mexico, and Barbara C. Biddle, Appellate Staff Attorney, Civil Division, Department of Justice, Washington D.C., with him on the on the brief), for Plaintiff-Appellant.

Roger Eaton, of Eaton, Martinez & Hart, P.C., Albuquerque, New Mexico, for Defendant-Appellee.

Before **SEYMOUR**, Chief Circuit Judge, **MURPHY**, Circuit Judge and **KANE,** District Judge.[*]

---

[*] The Honorable John L. Kane, Jr., Senior United States District Judge for the District of Colorado, sitting by designation.

**KANE**, Senior District Judge.

The United States filed this appeal after judgment was entered against it in a foreclosure action against Defendant McCall and sanctions imposed. We AFFIRM.

After a bench trial to determine whether the Farmers Home Administration (FmHA)[1] was entitled to foreclose against property pledged to secure several notes on which the Defendant had defaulted and collect a 10% surcharge pursuant to 28 U.S.C. § 3011, the district court entered judgment against the government and in favor of McCall. The district court found the foreclosure action "frivolous and groundless" in light of the parties' binding settlement agreement which served as an accord and satisfaction of the debt owed and therefore barred the action. Mem. Op. & Order, No. 95-CV-846M, pp. 1-2, 13-14 (Appellant's App. at pp. 70-71, 82-83). "[T]o deter frivolous and groundless filings in the future, as well as to compensate defendants for the economic harm incurred" as a result of Plaintiff's "unreasonable conduct," the court also imposed financial sanctions against the government in the form of Defendant's costs, litigation expenses and attorney fees. (*Id.* at p. 15.)

The government appeals, arguing the district court's decision is "fundamentally mistaken in law and in fact." The government denies McCall ever accepted FmHA's

---

[1]    FmHA was the federal agency within the Department of Agriculture now known as the Rural Economic and Community Development agency.

offer in settlement because, as a matter of law, an acceptance of the offer could only have been made by a tender of the settlement amount by the September 6, 1995 offer expiration date, and contends neither McCall nor anyone acting on his behalf ever did so. McCall asserts this is a significant departure from the government's position at trial, where the significance of McCall's failure to tender the settlement amount was neither addressed nor raised, and maintains the evidence and record presented to the district court support the decision made.

Upon careful review of the record, including the trial transcript, and considering the parties' arguments on appeal, we affirm for substantially the reasons given by the district court in its Memorandum Opinion and Order.

## I. THE NATURE AND EXISTENCE OF AN AGREEMENT TO SETTLE THE DEBT FOR $84,000.

At issue is the form and the amount of the offer in compromise extended by FmHA to McCall during prolonged settlement negotiations in the spring and summer of 1995. In concluding the agency had "clearly put forward an offer to compromise [McCall's debt] for a specific sum within a specific time . . . [with] no conditions or prerequisites which allow modification or revocation [thereof] after acceptance," the district court reviewed a series of letters and communications between McCall and Assistant United States Attorney Manuel Lucero between March and July 1995. (Mem. Op. & Order at pp. 4-7.)

The communications began on March 17, 1995, when an Assistant Regional Attorney for the agency notified the United States Attorney's Office in Albuquerque of

McCall's debt and recommended commencement of a foreclosure action. Letter, dated 3/17/95 from Abeita to Kelly (Appellant's App. at p. 186-88). In a "Special Remarks" section attached to the letter, the agency attorney stated "[t]he amount the agency will settle this account for is $76,894.00." The letter was forwarded to Lucero, who commenced negotiations with McCall in accordance therewith.

The settlement negotiations culminated in a June 26, 1995 letter from Lucero to McCall. After rejecting a series of counteroffers from McCall, Lucero wrote as follows:

> I have contacted the agency regarding your offer to settle this matter for $70,000; however, the Farmers Home Administration would like me to proceed with the foreclosure action unless you can pay to this office on or before July 15th $84,000. If that is not possible, I will file the foreclosure action on July 17th.

Letter, Tr. Ex. 22 (Appellant's App. at p. 165). At trial, Lucero stipulated that on July 17th he extended the offer expiration date to September 6, 1995. Trial Tr. at 5:17-22 (Appellant's App. at p. 92). Based on his review of these communications and the testimony at trial, the district court concluded the June 26th letter, as modified by Lucero's representations on July 17th, constituted an unconditional offer by the agency, not subject to revocation or modification if accepted before the September 6th offer expiration date, to settle McCall's debt for $84,000. (Mem. Op. & Order at 7-8.)

On September 5, 1995, Blagg, a neighbor of McCall and owner of land adjacent to the property that was the subject of the threatened foreclosure action, called Lucero to notify him of an agreement he had reached with McCall to loan McCall the $84,000 to

pay off the FmHA loan and clear title to his property "pursuant to the offer that had been communicated by Manuel Lucero to William McCall in the letter of June 26, 1995." *See* 4/14/97 Affid. of David Blagg (Appellant's App. at p. 196, ¶ 2). Blagg stated in his affidavit that he understood from Lucero at the time of the conversation that his offer "would be acceptable to FHA and that a closing would be arranged in the near future." (*Id.* ¶ 3.)

Rather than call Blagg to testify at trial so he could be questioned directly about this statement, Lucero stipulated to the admission of the affidavit and simply declared, at the outset of the trial proceedings, that his handwritten notes of his conversation with Blagg indicated otherwise. Referring to his notes (also admitted by stipulation as trial Exhibit 24), Lucero stated that "basically, Exhibit 24 says that when I spoke to Mr. Blagg [I told him] that a new appraisal had to be [done]." Trial Tr. at 6:7-14 (Appellant's App. at p. 93).[2]

---

[2]    Exhibit 24, in its entirety, reads as follows:

9/5/95

T/C to David Blag   984-2033

Call him tomorrow w/ amt to settle case plus appraisal if any
title search, survey if any.

T/C to Art Bristos Re possible settlement

9/6/95

T/C to David Blag Re purchase of property –

It is clear from the court's findings and conclusions that it rejected Lucero's

_____

(Appellant's App. at p. 167).

We pause here briefly to note that, for reasons difficult to discern or comprehend, Assistant United States Attorney Lucero represented the government at trial in this case. Clearly Lucero was a material witness – *the* material witness – as to the nature and amount of the agency's settlement offer to McCall. The ethical dilemma presented by Lucero's dual role as witness and advocate was not raised by the parties or the court, apparently because, at the outset of trial at least, the parties represented that the factual issues were uncontested. It is clear from our review of the trial transcript, however, and has been made clearer still by the government's position on appeal, that the factual issues surrounding the nature of the agency's offer and Blagg's acceptance of it on behalf of McCall were contested and were the subject of substantial dispute almost immediately after trial began.

These issues turned, almost *in toto*, on Lucero's testimony and representations regarding his communications over time with McCall and Blagg. In addition to testifying about the content and meaning of his handwritten notes in Exhibit 24, which testimony was directly contradicted by Blagg in his affidavit (Appellant's App. at p. 196), Lucero was also injected through the testimony of his own witness into the middle of a factual dispute regarding when, if ever, the agency communicated its demand for a new appraisal to him. When Lucero asked Farm Agency representative Tom Hutton on direct examination when it was that Hutton had contacted the U.S. Attorney's Office to say he needed a new appraisal before anything could be settled with McCall, Hutton answered:

A.    Probably at some point when **you called** and **said that they** [McCall] had offered the [$84,000] . . .

Trial Tr. at 12 (Appellant's App. at p. 99:9-11)(emphasis added).

Lucero's status as a material witness cannot be disputed. When the government shifted its focus on appeal from the conditional nature of the $84,000 offer to the lack of a formal tendering of monies, it injected Lucero still further into both the legal and factual disputes *sub judice*. Under either scenario, the ultimate factual disputes turn on Lucero's testimony about what he meant in his June 26 letter to McCall and what he said during the September 5 telephone conversation with Blagg. Lucero should never have been in this position, and once he found himself there, should not have allowed himself to remain.

interpretation of the events. In its findings and conclusions, the district court noted that the June 26 letter set forth no conditions or prerequisites that would allow the modification, after acceptance, of such a critical term as the $84,000 amount. (Mem. Op. & Order at 7.) The court also noted that the $84,000 offer remained pending for "several weeks" before both the original and extended expiration dates, during which time the Agency "neither undertook an appraisal nor communicated an appraisal requirement to defendants." (*Id.*) "An agreement was completed," the court concluded, "[by] September 6, and McCall reasonably expected his case had been resolved." (*Id.*) In reference to Lucero's arguments at trial and the testimony of Agency representative Hutton, the district court observed that

> . . . FmHA or the Farm Service Agency may have intended to lock in an amount to be paid, acquire a new appraisal, and then enforce the amount agreed upon should the appraisal be lower than anticipated, and reject it should the appraisal be higher than anticipated. Hopefully, this is an erroneous perception and FmHA was not working, as it might appear, to take unfair advantage. But even if the agency intended to modify the payout amount to correspond to a current appraisal, regardless of which side received the benefit of the change, it cannot impose a condition on an offer or on an agreement to settle that has never been communicated.

Mem. Op. & Order at 8.

With regard to the standard of review on appeal, McCall characterizes the district court's decision as primarily a factual decision that must stand unless clearly erroneous. The government contends the issue is primarily one of formation of contract reviewable

*de novo*, but says the decision to throw out its foreclosure case was so flawed that "reversal would be required even under the clearly erroneous standard of review."

Issues involving the formation, construction and enforceability of a settlement agreement are resolved by applying state contract law. *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996). Here, the district court applied New Mexico law and general common law principles of offer and acceptance to conclude that the agency, through Assistant United States Attorney Lucero and McCall, through Blagg, on September 5, 1995 consummated a binding agreement to settle the case for $84,000. We agree with McCall that this conclusion turned primarily on factual determinations regarding the history of the parties' settlement negotiations, their intent, and the nature and amount of settlement offer ultimately extended. These factual determinations formed the basis for the district court's legal conclusions and will be accepted on review unless clearly erroneous. *See Naimie v. Cytozoyme Lab., Inc.*, 174 F.3d 1104, 1111 (10th Cir. 1999)(question of whether a contract exists is a mixed question of law and fact reviewed "'under either the clearly erroneous standard or de novo standard depending on whether the mixed question involves primarily a factual inquiry or the consideration of legal principles'")(quoting *Armstrong v. Comm'r*, 15 F.3d 970, 973 (10th Cir. 1994)).

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985).

We find the district court's account of the evidence before him both plausible and reasonable in light of the record viewed in its entirety. Applying these facts to the law under a *de novo* standard, we agree the June 26 letter from Lucero to McCall communicated the Agency's unconditional offer to settle McCall's debt for $84,000.

That the Agency would like us on appeal to revisit the question, undisputed at trial, that Blagg communicated an acceptance of that offer on September 5, 1995, compels no different conclusion. The government's argument that an actual tendering of monies was a necessary prerequisite to an acceptance of the $84,000 offer as a matter of law was not argued to the district court or offered for its consideration at trial. The general rule is that this court will not consider an issue on appeal that was not raised below. *See Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992)(and cases cited therein).

We affirm the district court's fact-driven conclusion that on September 5, 1995 the parties consummated a binding agreement to settle McCall's debt for $84,000, which agreement operated as a bar to the foreclosure action before it under the doctrine of accord and satisfaction. We proceed next to the question of sanctions, and specifically to the question of whether the district court's assessment of attorney fees against the government for its bad faith in pursuing the foreclosure action notwithstanding this agreement was justified.

II. <u>SANCTIONS</u>.

-9-

Under the "American Rule" governing respective financial burdens of litigating civil claims, the prevailing party is not entitled to collect attorney fees from the loser. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1973). We recognize a "narrow exception" to the American Rule, allowing a trial court to award attorney fees when a party's opponent acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Sterling Energy Ltd. v. Friendly Nat'l Bank*, 744 F.2d 1433, 1435 (10th Cir.1984).

Awarding fees under the bad faith exception is within a trial court's discretion and may be reversed only for an abuse of that discretion. *Sterling* at 1435-36. To justify a shifting of fees, this court "requires more than merely a finding that a claim was frivolous when brought.... [T]he bad faith exception is drawn very narrowly and may be resorted to 'only in exceptional cases and for dominating reasons of justice.'" *Id.* at 1437 (quoting *Cornwall v. Robinson*, 654 F.2d 685, 687 (10th Cir.1981)). "'Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion.'" *United States Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1241 (10th Cir. 1998)(quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)(considering inherent power to assess fees as a sanction for failure to comply with discovery orders under Fed. R. Civ. P. 37(c)). In light of these standards, we consider carefully the district court's findings supporting the assessment of fees against the government to determine whether the district court abused its discretion.

The district court's findings in support of its fee-shifting decision went beyond a

-10-

determination that the foreclosure action was frivolous when filed. Addressing the larger context of the Agency's actions, the district court noted that, while the Agency had available to it legal counsel not only in the office of the United States Attorney but also in the Department of Agriculture, it chose not to "utilize counsel or consider its circumstances in light of clear and long-standing legal principles," and instead unilaterally "repudiated its own demand, refused the payment solicited, and then initiated an action to foreclose." (Mem. Op. & Order at 13-14.) With regard to the Agency's attempt, at trial, to distance itself from Lucero's June 26 letter and to insist the $84,000 amount was always conditional and subject to upward adjustment based on a new appraisal, the court observed that the record "goes only [in] the opposite direction and makes the agency appear neither fair nor forthright." (*Id.* at 14)(noting FmHA originally offered to settle McCall's debt for $76,894, and then, "a mere five months later and several thousand dollars more than its initial figure, FmHA refuses defendant, money in hand").

The district court found the Agency had "no basis in fact or in law for its abrupt change of position, which revoked the essential term of settlement it had itself unilaterally established."

> Then going well beyond refusal to accept the amount in compromise, FmHA followed one unjustifiable action by another. It caused to be filed the present civil action without factual or legal premise, in an attempt to enforce original obligations as if no settlement agreement had been reached. The agency's actions depart so far from reasonableness as to

warrant the imposition of sanctions.

(Mem. Op. & Order at 14.)

There is support in the record for the district court's view of the facts and we find them neither unreasonable nor implausible under the facts and evidence adduced at trial. Given these findings, we cannot conclude that the district court's decision to shift McCall's obligation to pay his own attorney fees to the Agency as a sanction for bad-faith conduct was an abuse of discretion.

For the foregoing reasons, the district court's decisions to enter judgment against the United States and in favor of McCall under the doctrine of accord and satisfaction and to assess fees, costs and other expenses against the United States based on the bad faith filing of the foreclosure action against McCall are AFFIRMED.