**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 18 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

FEDERAL DEPOSIT INSURANCE
CORPORATION, as successor to
Resolution Trust Corporation, as receiver
for First American Savings Bank,

        Plaintiff - Appellant,

v.

TARA SCHUCHMANN,

        Defendant - Appellee,

and

BERNARD SCHUCHMANN,

        Defendant.

No. 01-2003

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CIV-93-1024 MV/RLP)**

---

Lawrence H. Richmond, Counsel, Federal Deposit Insurance Corporation, Washington,
D.C. (Ann S. DuRoss, Assistant General Counsel, and Colleen J. Boles, Senior Counsel,
Federal Deposit Insurance Corporation, Washington, D.C.; F. Thomas Hecht and
Claudette P. Miller, Ungaretti & Harris, Chicago, Illinois, with him on the briefs), for the
Plaintiff-Appellant.

Douglas P. Lobel, Kelley Drye & Warren LLP, Washington, D.C. (Alice Tomlinson
Lorenz, Miller, Stratvert & Torgerson, P.A., Albuquerque, New Mexico; Joseph F.
Yenouskas, Kelley Drye & Warren LLP, Washington, D.C., with him on the brief), for
the Defendant-Appellee.

Before **BRISCOE**, **ANDERSON**, and **LUCERO**, Circuit Judges.

**BRISCOE**, Circuit Judge.

Federal Deposit Insurance Corporation (FDIC) appeals the district court's award of attorney fees and costs to defendant Tara Schuchmann.[1]  We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and reverse and remand with directions to vacate the judgment appealed.

I.

In 1985, a group of investors led by defendant's spouse, Bernard Schuchmann, acquired First American Savings Bank.  In 1986, First American was converted to a federally-chartered savings and loan and, at all relevant times, it was insured by the FDIC. Tara Schuchmann, a stock broker, was a director of First American from November 1986 through September 1989.  She also served as a member of its loan/investment committee from the spring of 1988 through September 1989.  Bernard Schuchmann was the controlling shareholder and chairman of the board of First American.

First American failed and, in 1990, was put under the receivership of the Resolution Trust Corporation (RTC).  In 1993, RTC brought suit against various officers

---

[1]  Tara Schuchmann filed a motion to dismiss this appeal, arguing the appeal was not taken from a "final decision," as required by 28 U.S.C. § 1291.  This motion was later withdrawn.

and directors of First American and one of its attorneys and the attorney's law firm, alleging state common law claims for breach of fiduciary duties, gross negligence, and negligence. In 1996, the FDIC succeeded to the interests of RTC as receiver and was substituted as plaintiff in this action. All defendants but the Schuchmanns settled their claims before trial.

The case was stayed in 1995 pending a criminal prosecution against Bernard Schuchmann. The stay was lifted in 1997 and the case against the Schuchmanns went to trial in 1998. At the close of the FDIC's case, the district court granted Tara Schuchmann judgment as a matter of law. However, the case continued as to Bernard Schuchmann, ending with a jury verdict in his favor (the jury found him negligent with respect to certain transactions, but declined to award damages because of lack of proximate cause). The district court granted Tara Schuchmann's motion for attorney fees and costs and awarded her $862,600.50. The amount represented all of her attorney fees and costs ($159,059.00) and one-half of the Schuchmanns' common defense costs and fees ($703,541.50).

## II.

The district court awarded attorney fees and costs under the bad faith exception to the "American Rule" pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(b). Section 2412(b) makes the United States liable for attorney fees "to the same extent that any other party would be liable under the common law or under the terms of

any statute which specifically provides for such an award." An award of attorney fees and expenses under the bad faith exception of the EAJA "is committed to the discretion of the district court and will be reversed only when there is a showing of abuse of discretion." United States v. 2,116 Boxes of Boned Beef, 726 F.2d 1481, 1488 (10th Cir. 1984); see also United States v. McCall, 235 F.3d 1211, 1216 (10th Cir. 2000).

III.

Under the "American Rule," each party bears the financial burden of litigating a civil claim. See McCall, 235 F.3d at 1216. Thus, "the prevailing party is not entitled to collect attorney fees from the loser." Id. However, under the bad faith exception, a court may award attorney fees when a party's opponent acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." Sterling Energy, Ltd. v. Friendly Nat'l Bank, 744 F.2d 1433, 1435 (10th Cir. 1984). "A party acts in bad faith only when the claim brought is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." Id. (internal quotations omitted). This court has repeatedly recognized that the exception is a narrow one and may be resorted to only in exceptional cases. E.g., Autorama Corp. v. Stewart, 802 F.2d 1284, 1287 (10th Cir. 1986). "Hence, it is not surprising that attorneys' fees are awarded only when there is 'clear evidence' that challenged actions are taken entirely without color and are pursued for reasons of harassment or delay." Id. at 1288.

*Nature of FDIC claims*

The first issue is whether the FDIC claims were entirely without color. The claims against Tara Schuchmann "essentially arose from her abdication of responsibility as a director of First American." Aplt. Br. at 9. The claims against her "clustered around three sets of transactions: the Intervest Note Acquisitions, the Westmoreland Loan and certain securities acquisitions." Id. at 14. In 1998, after Tara Schuchmann filed a motion for summary judgment as to the securities claim, the FDIC filed a motion for leave to withdraw, *inter alia*, the securities claim against her purportedly because the damages from this claim were comparatively small and the FDIC needed to simplify and expedite its case because the case was set for a five-day trial. The district court granted the FDIC's motion and thus deemed the motion for summary judgment moot. In November 1998, the district court rejected the Schuchmanns' motion for leave to file a motion for summary judgment out of time. The parties did not provide this court with the Schuchmanns' untimely motion for summary judgment; therefore, we are uncertain which claim or claims it addressed. However, the FDIC's brief states that the motion asked for summary judgment as to all claims against defendants. Finally, in December 1998, the district court denied the Schuchmanns' motion for partial summary judgment. The motion argued that several of the FDIC's claims were barred by New Mexico's statute of limitations. The court denied the motion, holding that the applicable statute of limitations was tolled under the adverse domination doctrine. The court stated:

Finally, in the case at bar, the Court finds that the Plaintiff has presented a genuine issue of material fact as to whether the Defendants' positions and conduct warrant tolling the New Mexico statute of limitations under the adverse domination doctrine. *Clearly, in this case, the Defendants held key positions within First American and were personally involved in the alleged transactions now before the Court.* Moreover, the Plaintiff has presented a question of fact as to whether any of First American's directors would have exposed the Defendants' alleged wrongdoings on behalf of First American. Therefore, the Court will deny the Defendants' summary judgment motion.

Aplee. App. at 179-80 (emphasis added). The two remaining claims against Tara Schuchmann went to trial in December 1998.

At the conclusion of the FDIC's case at trial, Tara Schuchmann moved for judgment as a matter of law. In granting the motion, the district court stated:

I am going to grant the motion. I am going to tell the FDIC attorneys, I believe that if Mrs. Schuchmann's name had been Mrs. Bouty or Mrs. Shriver or Mrs. Neary, she probably wouldn't have been indicted at all. And if Mr. Schuchmann owes money, I am sure that the jury will so find. If he doesn't, I am sure the jury will so find. I have all the faith in that.

I do resent – in any type of criminal or civil proceeding, and I see it all the time in the U.S. Attorney's Office, in order to get the husband to plead guilty to something, we indict the wife, too. She was there in the car when the dope took place, changed hands or something, when the wife didn't have a damn thing to do with it. Frankly, if I was Mrs. Schuchmann, I would resent, as any defendant would, being sued. But in this case, it's obvious to the Court that the reason she was sued is to try to get at her husband. That motion will be granted.

Aplee. App. at 267.

In order to invoke the bad faith exception to the "American Rule," there must be clear evidence that the FDIC claims were entirely without color. See Autorama Corp., 802 F.2d at 1288. In its order awarding costs, however, the district court did not provide

-6-

*any* explanation for finding the claims to be completely without merit. Indeed, the only reference to that fact was the court's conclusory statement that the claims were "meritless." Aplt. App. at 576. Nor did the court explain why the claims lacked merit in its oral ruling granting the motion for judgment as a matter of law.

The district court's conclusory ruling is similar to that of the district court in FDIC v. Calhoun, 34 F.3d 1291 (5th Cir. 1994). In Calhoun, the district court entered sanctions against the FDIC pursuant to Rule 11. Like here, the district court ruled that the FDIC claims were legally without merit and that the claims were intended to burden the defendant with litigation costs in order to extract an unwarranted settlement. Id. at 1295. In holding that the district court abused its discretion, the Fifth Circuit stated:

> To begin with, the district court was not pellucid in explaining what legal issues were insufficiently researched or unwarranted. This failure to lay out the grounds for such serious sanctions may itself be reversible error. We have long held that a district court, in applying sanctions, may have to make a detailed explanation for its legal reasons. . . .
> The purpose of creating such a record is simple: In order to guard against the application of hindsight by district courts who have sat through long, complicated, and often contentious proceedings, we must not be put in the position of having to guess what unwarranted factual and legal errors were the basis of the sanctions. At very least, such guidelines allow a fair and full appellate review of the decision.

Id. at 1297. The Fifth Circuit also opined that it was

> puzzled by [defendant's] failure to bring any dispositive motions. . . .
> In the almost four years between the time [defendant] was added . . . and the trial, it had ample opportunity to cut short this litigation by filing a dispositive motion . . . . These failures to act and then apply blame smacks of "Monday morning quarterbacking."

-7-

Id. at 1300. Although Calhoun is a Rule 11 sanction case, the court's rationale in concluding the district court abused its discretion highlights the need for the district court to clearly set forth the basis for its rulings when sanctioning a party under Rule 11 or awarding attorney fees and costs under the EAJA.

Here, like the defendant in Calhoun, Tara Schuchmann did not file a timely motion for summary judgment as to the merits of the Intervest and Westmoreland claims. Yet, now she argues those claims were frivolous. Although there is no requirement that a party seeking attorney fees file such a dispositive motion, her failure to do so casts doubt on her assertion that the FDIC claims were completely without merit. In addition, in denying the Schuchmanns' motion for summary judgment based on the New Mexico statute of limitations, the district court stated that "[c]learly, in this case, the Defendants held key positions within First American and were personally involved in the alleged transactions now before the Court." Aplee. App. at 179. The FDIC claims against Tara Schuchmann also survived a motion to dismiss. However, because the district court failed to indicate why it found the claims to be frivolous, and because significant portions of the trial transcript were not included in the record on appeal, an independent review of the claims and the evidence presented at trial is impossible. Such a review is unnecessary, however, because we conclude that the district court's conclusory finding of bad faith or improper motive amounted to an abuse of discretion.

*Evidence of bad faith*

As discussed, in order to grant sanctions under the bad faith exception, there must be clear evidence that a party's claims were frivolous *and* that they were pursued in bad faith. Autorama Corp., 802 F.2d at 1288. The mere fact that a party did not prevail in the district court does not necessarily imply that its conduct was improper. "Further, bad faith requires more than a mere showing of a weak or legally inadequate case, and the exception is not invoked by findings of negligence, frivolity, or improvidence." Id. In addition to making an explicit finding of improper motive, the trial court must also inform this court "upon what factual basis [it] arrived at the conclusion of bad faith." Sterling Energy, 744 F.2d at 1437 (reversing and remanding fee award because trial court failed to set forth factual basis supporting finding of bad faith); see also Cornwall v. Robinson, 654 F.2d 685, 687 (10th Cir. 1981) (reversing fee award because trial court failed to make bad faith finding).

Here, the district court stated that "[p]laintiff and its attorneys acted in bad faith when they asserted meritless claims against Mrs. Schuchmann and pursued endless discovery at a substantial cost only to have the case end in a directed verdict at trial in favor of Mrs. Schuchmann." Aplt. App. at 576. The district court listed several examples of bad faith by the FDIC. However, there are several problems with the district court's findings. First, the court relied *exclusively* on assertions made in the affidavit of one of Tara Schuchmann's attorneys that was filed in conjunction with the motion for costs. The

court repeatedly cited to this affidavit but never cited to the record. Second, even though the district court made the required "bad faith" finding, its finding appears to be uncertain. In its order, the district court stated:

> In the <u>Sterling Energy</u> case . . . the court stated that the trial judge must make a finding of bad intent or improper motive by the guilty party in order to rely upon the bad faith exception to the American Rule. This Court's own statement prior to granting Mrs. Schuchmann's motion for a directed verdict reveals the reverberating air of the FDIC's bad faith. The transcript illustrates this Court's impression that the government pursued Mrs. Schuchmann in order to get to her husband. *Whether or not that was in fact the government's motive is not the point of this Order.* It merely helps demonstrate the *appearance* of bad faith on the part of the government, and ignites this Court's *suspicions* regarding this conduct. Such conduct, coupled with the FDIC's declining Mrs. Schuchmann's settlement offers yet abruptly dropping the case against Mrs. Schuchmann during their appeal, all indicate bad faith on the part of the FDIC.

Aplt. App. at 578 (internal citations omitted) (emphasis added). The court was required to explicitly find improper motive. "Suspicions" or the "appearance" of such a motive is not enough.

Finally, the district court's factual basis for the award falls short of the required clear evidence of an improper motive. The district court listed several examples of the FDIC's alleged bad faith conduct during the course of the litigation. For example, the court stated the FDIC rejected the Schuchmanns' settlement offer of $240,000 and insisted on settling the case for $2.5 million. However, the court failed to explain how rejecting a settlement offer constituted bad faith. The court also opined that the FDIC's decision not to appeal its case against Tara Schuchmann indicated bad faith. But, there

-10-

are several reasons for not appealing a case that do not involve improper motive. Indeed, the fact that the FDIC chose not to appeal cuts against the district court's "suspicion" that the FDIC was attempting to overburden Tara Schuchmann with litigation costs. The court also stated that the FDIC had "improperly continued" the case because, during settlement negotiations, the "FDIC's attorneys were forewarned by [the magistrate judge] that it had no case against Mrs. Schuchmann." Aplt. App. at 577. However, the only evidence of the magistrate's alleged comments are the unsubstantiated assertions made in Tara Schuchmann's brief to the district court. See id. at 115.

The district court also listed the FDIC's opposition to the Schuchmanns' request for an extension of time to provide expert witness reports as indicia of bad faith. The deadline for expert reports was imposed by the court, not by the FDIC, and it is unclear how the FDIC's conduct amounted to bad faith. The court also cited several examples of bad faith by the FDIC during discovery. However, none of the examples indicate bad faith on the part of the FDIC and, more importantly, the magistrate who actually oversaw discovery refused to sanction the FDIC, despite repeated requests by Tara Schuchmann. Indeed, from the record before us it appears the only sanctions imposed were against Bernard Schuchmann for destroying documents in violation of a court order.

The only evidence that appears to support the district court's award was the FDIC's disparate treatment of the Schuchmanns during settlement negotiations. Although the FDIC settled with each director and officer individually, it demanded a joint

settlement with the Schuchmanns and refused to negotiate with Tara Schuchmann individually. This evidence could support the district court's suggestion that the FDIC sued Tara Schuchmann solely to obtain a larger settlement from her husband. However, without other evidence of such an improper motive, this evidence standing alone does not support the district court's finding of bad faith. The district court not only relied upon infirm evidence, but the evidence pointed to as indicia of bad faith fell short of the clear evidence of bad intent that is required to award attorney fees and costs. Accordingly, we conclude the district court abused its discretion in awarding attorney fees and costs against the FDIC.

REVERSED and REMANDED with directions to vacate the judgment appealed.