**F I L E D**

**PUBLISH**

**September 28, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FEDERAL TRADE COMMISSION,

      Plaintiff - Appellee/
      Cross - Appellant,

   v.

H. G. KUYKENDALL, SR.; C. H.
KUYKENDALL,

      Defendants - Appellants/
      Cross - Appellees,

   and

H.G. KUYKENDALL, JR.; DIVERSIFIED
MARKETING SERVICE
CORPORATION; NATIONAL
MARKETING SERVICE INC.; NPC
CORPORATION OF THE MIDWEST
INC.; MAGAZINE CLUB BILLING
SERVICE, INC.,

      Defendants.

No. 05-6047, 05-6138

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D. Ct. No. CIV-96-388-M)**

---

Andrew W. Lester, Lester, Loving & Davies, P.C., Edmond, Oklahoma (Gregory
J. Kerwin, Gibson, Dunn & Crutcher LLP, Denver, Colorado, and Susan B.
Loving, Lester, Loving & Davies, P.C., Edmond, Oklahoma, with him on the
briefs), for Defendants-Appellants/Cross-Appellees.

Michele Arington, Attorney (William Blumenthal, General Counsel, John F. Daly, Deputy General Counsel, and Gary L. Ivens, Of Counsel, with her on the briefs), Federal Trade Commission, Washington, DC, for Plaintiff-Appellee/Cross-Appellant.

Before **TACHA**, Chief Circuit Judge, **EBEL**, Circuit Judge, and **CASSELL**, District Judge.[†]

**TACHA**, Chief Circuit Judge.

H.G. Kuykendall, Sr. and C.H. Kuykendall (together, the "Senior Kuykendalls") appeal the District Court's denial of attorney fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(b). The Federal Trade Commission ("FTC") cross-appeals the District Court's award of certain costs under 28 U.S.C. § 2412(a)(1). We take jurisdiction under 28 U.S.C. § 1291, AFFIRM the denial of attorney fees, and REVERSE the award of certain costs to the Senior Kuykendalls.

## I. BACKGROUND

The factual background of this case has been exhaustively set out in our en banc opinion, *F.T.C. v. Kuykendall*, 371 F.3d 745 (10th Cir. 2004) ("*En banc Opinion*"), and the vacated panel opinion, *F.T.C. v. Kuykendall*, 312 F.3d 1329 (10th Cir. 2002) ("*Panel Opinion*"). We therefore only briefly summarize the procedural history. In 1996, the FTC brought an action against a number of

---

[†]The Honorable Paul G. Cassell, District Judge of the United States District Court for the District of Utah, sitting by designation.

affiliated telemarketing corporations as well as the Senior Kuykendalls and H.G. Kuykendall, Jr., both as individuals and as officers of the corporate defendants (collectively "the defendants"). The complaint alleged that the defendants engaged in deceptive and misleading business practices in violation of 15 U.S.C. § 45. The parties entered into a settlement agreement that was eventually incorporated into a "Stipulated Final Judgment and Order for Permanent Injunction" ("Permanent Injunction").

In 2002, the FTC filed a motion to show cause why the defendants should not be found in contempt of the Permanent Injunction and requested that the District Court award $51 million in contempt sanctions. All of the defendants moved to dismiss on due process grounds, and the Senior Kuykendalls separately filed a motion to dismiss claiming a lack of personal liability. The Senior Kuykendalls argued that they played no role in the management of the corporations during the period of the alleged contempt and therefore could not be held liable for violating the Permanent Injunction. After an evidentiary hearing, the District Court denied the Senior Kuykendalls' motion, ruled in the FTC's favor as to liability, and held each of the defendants jointly and severally liable for $39 million. *En Banc Opinion*, 371 F.3d at 750–51.

The defendants appealed the District Court's ruling on a variety of grounds including an individual appeal by the Senior Kuykendalls arguing that the District Court erred by denying their motion to be dismissed from the contempt

proceedings. A panel of this court affirmed the District Court's findings that all of the defendants were liable, but remanded for further proceedings as to the amount of damages awarded. *See Panel Opinion*, 312 F.3d at 1342–43. This Court granted rehearing en banc, vacated the panel opinion, and reversed the District Court's judgment as to the Senior Kuykendalls' liability, but upheld the District Court's finding of liability as to H.G. Kuykendall, Jr. and one of the corporate defendants. *See En Banc Opinion*, 371 F.3d at 757–63.

Thereafter, the Senior Kuykendalls filed a motion for attorney fees and expenses, pursuant to 28 U.S.C. § 2412(b). They also sought taxation of approximately $168,000 in costs associated with the appeal, *see* 28 U.S.C. § 2412(a)(1), which included over $161,000 needed to secure a $5 million letter of credit that the District Court required in order to stay enforcement of the judgment during the course of the appeal. The District Court awarded the Senior Kuykendalls a total of $167,946.77, but denied their motion for attorney fees. The Senior Kuykendalls now appeal the District Court's denial of attorney fees, and the FTC cross-appeals the award of costs associated with the letter of credit.

## II. DISCUSSION

A.    The District Court Properly Denied the Motion for Attorney Fees

Under the "American Rule," the prevailing party in civil litigation may not collect attorney fees from the loser. *United States v. McCall*, 235 F.3d 1211, 1216 (10th Cir. 2000). In certain rare circumstances, however, an exception to

-4-

this rule is applied when a party opponent is found to have acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (quotation omitted). This "bad faith exception" to the American Rule applies to the Government pursuant to 28 U.S.C. § 2412(b), which states that the United States is liable for attorney fees "to the same extent that any other party would be liable under the common law." 28 U.S.C. § 2412(b). In order to fall within the exceedingly narrow bad faith exception to the general rule, there must be clear evidence that the challenged claim "is entirely without color *and* has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." *F.T.C. v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1201 (10th Cir. 2005). Because a fee award under § 2412(b) is punitive, it "requires more than a showing of a weak or legally inadequate case," and is only appropriate "in exceptional cases and for dominating reasons of justice." *United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481, 1488 (10th Cir. 1984).

Whether the bad faith exception applies turns on the party's subjective bad faith. *Sterling Energy Ltd. v. Friendly Nat'l Bank*, 744 F.2d 1433, 1435 (10th Cir. 1984). A district court's determination as to whether a party has acted in bad faith is a finding of fact that we review for clear error. *Bergman v. United States*, 844 F.2d 353, 357 (6th Cir. 1988); *Vibra-Tech Eng'rs, Inc. v. United States*, 787 F.2d 1416, 1418 (10th Cir. 1986); *Int'l Union of Petroleum and Indus. Workers v. W. Indus. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir. 1983). Finally, we review a

district court's denial of attorney fees for an abuse of discretion. *2,116 Boxes of Boned Beef*, 726 F.2d at 1488.

The District Court did not make any findings as to the first prong of the bad faith test—whether the FTC's claim was colorable—because it concluded that the Senior Kuykendalls had failed to present any evidence that the FTC's claims were brought for an improper purpose. The Senior Kuykendalls' argument on appeal relies on statements made in our *En Banc Opinion* to support their claim of bad faith. Specifically, they highlight that this Court found that the FTC failed to introduce any evidence to support a finding that the Senior Kuykendalls could be held personally liable for the challenged conduct. *See En Banc Opinion*, 371 F.3d at 759–63.

Even if we were to accept the Senior Kuykendalls' contention that the claim against them was colorless, that fact alone would not support taxation of fees on the FTC.[1] The test for bad faith is conjunctive—it requires clear evidence of *both* a complete lack of color *and* an improper purpose on the part of the government. *See Freecom*, 401 F.3d at 1201. Our statements regarding the

---

[1]We note, however, the en banc court specifically observed that "[s]ome evidence exists" to support one of the FTC's theories of liability as to the Senior Kuykendalls—that as signatories to the Permanent Injunction, the Seniors may have obliged themselves to oversee compliance with the Permanent Injunction. *En Banc Opinion*, 312 F.3d at 760. This observation alone undercuts the Senior Kuykendalls' contention that the claim against them was totally without color.

factual inadequacies in the FTC's case do not shed light on whether the FTC subjectively acted with an improper purpose. In fact, there is no evidence to suggest as much.

The Senior Kuykendalls argue, however, that the case against them was so deficient as to give rise to an inference that the claim was motivated by an improper purpose. *See Sterling Energy*, 744 F.2d at 1437 (stating that "a case can be so frivolous as to reflect impermissible conduct"). The District Court found that such a finding was not warranted in this case because there was a dearth of other evidence to suggest that the FTC brought the claims for any improper reason. Indeed, "bad faith requires more than a mere showing of a weak or legally inadequate case, and the exception is not invoked by findings of negligence, frivolity, or improvidence." *F.D.I.C. v. Schuchmann*, 319 F.3d 1247, 1252 (10th Cir. 2003).

Finally, the Senior Kuykendalls point out that this Court, in questioning why the FTC waited approximately five years before filing the contempt action, suggested that the FTC's conduct "raises questions about its bona fides." *En Banc Opinion*, 371 F.3d at 755. As the District Court noted, however, this observation was made with regard to the timing of the FTC's actions against all the defendants (some of whom were properly held liable) and does not provide "clear evidence," *see Freecom*, 401 F.3d at 1201, that the action against the Senior Kuykendalls was motivated by an improper purpose. Accordingly, the

District Court's factual determination that the FTC did not pursue its action against the Senior Kuykendalls in bad faith is not clearly erroneous. Clearly, then, the court did not abuse its discretion in denying the Senior Kuykendalls' recovery of attorney fees.

B.    Sovereign Immunity Bars the Award of Costs not Enumerated in 28 U.S.C. § 1920

The Federal Rules of Appellate Procedure direct that costs be taxed against the party who loses on appeal. *See* Fed. R. App. P. 39(a). These costs may include "premiums paid for a supersedeas bond or other bond to preserve rights pending appeal." Fed. R. App. P. 39(e)(3). But "[c]osts for or against the United States, its agency, or officer will be assessed under Rule 39(a) only if authorized by law." Fed. R. App. P. 39(b). The EAJA authorizes an award of certain costs against the United States. Specifically, the EAJA provides that:

> [A] judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action.

28 U.S.C. § 2412(a)(1).

After prevailing on appeal, the Senior Kuykendalls filed a bill of costs with the clerk of the District Court. Among other expenses, the Senior Kuykendalls sought remuneration for the $161,722.86 incurred in obtaining a $5 million letter

of credit that the District Court required as a condition of obtaining a stay of enforcement of the contempt judgment while the case was on appeal. The FTC objected to assessment of this cost, arguing that there was insufficient documentation to justify it. The District Court assessed the cost to the FTC, finding first that a letter of credit is similar to a supersedeas bond and therefore the cost incurred in obtaining it was taxable to the Government under Fed. R. App. P. 39(e)(3), and second, that there was sufficient documentation to justify the cost. Thereafter, the FTC filed a motion for reconsideration raising for the first time a jurisdictional objection to the award of costs. The FTC argued that 28 U.S.C. §§ 2412(a)(1) and 1920 do not authorize the taxation of costs associated with a letter of credit against the United States. The District Court denied the FTC's motion, finding that the FTC waived the issue having not raised it earlier.

The FTC now appeals the award of costs associated with the letter of credit based only on principles of sovereign immunity. Specifically, the FTC argues that under § 2412(a)(1), which is a limited waiver of sovereign immunity, *see Vibra-Tech Eng'rs*, 787 F.2d at 1419, the only costs that are taxable against the United States are those listed in § 1920. Although the FTC's failure to timely raise this issue before the District Court is regrettable, the FTC's claim of sovereign immunity presents an exception to the general rule that issues not raised before the District Court are waived. *See In re Talbot*, 124 F.3d 1201, 1205 (10th Cir. 1997). We review whether the federal government has waived

sovereign immunity de novo.  *See Shaw v. United States*, 213 F.3d 545, 548 (10th Cir. 2000).  In doing so, we note that waivers of sovereign immunity "cannot be implied but must be unequivocally expressed," *United States v. Mitchell*, 445 U.S. 535, 538 (1979), and that any such waiver "must be strictly construed in favor of the United States," *Ardestani v. INS,* 502 U.S. 129, 137 (1991).

The starting point in interpreting a statute "must be the language employed by Congress, and we assume that the legislative purpose is expressed by the ordinary meaning of the words used." *Hain v. Mullin*,  436 F.3d 1168, 1176 (10th Cir. 2006) (en banc) (quoting *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982)).  The word "enumerate" ordinarily means "to ascertain the number of," to "list," or to "specify." Webster's Third New Int'l Dictionary 759 (1981).   In context, the most natural reading of the phrase "as enumerated in section 1920 of this title" is that those costs taxable to the prevailing party are those listed in § 1920.  Indeed, this Court has stated that "the very terms of section 2412(a) indicate that the limits contained in section[] 1920 . . . apply to any award of costs made pursuant to that statute." *Hull by Hull v. United States*, 978 F.2d 570, 573 (10th Cir. 1992).  There is no question that costs associated with staying a civil judgment on appeal are not among those listed in § 1920.[2]

_____

[2]28 U.S.C. § 1920 states:
A judge or clerk of any court of the United States may tax as costs the following:

(continued...)

-10-

The Senior Kuykendalls argue, however, that the comma placed after the word "costs" sets off the entire phrase "judgment for costs" from the qualifying phrase "as enumerated in section 1920." Therefore, according to the Senior Kuykendalls, the qualifying phrase modifies the word "judgment"—and the statute is therefore better understood to broadly authorize a judgment "like" that provided for in § 1920, rather than an exclusive list of what qualifies as "costs."

The Senior Kuykendalls' grammatical arguments are not persuasive for several reasons. First, such an interpretation is contrary to the ordinary meaning of the word "enumerate," which, again, means to "list" or to "specify." Webster's Third New Int'l Dictionary 759 (1981). Second, punctuation is not necessarily decisive in interpreting a statute. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 250 (1989) (O'Connor, J., dissenting) ("'Punctuation is . . . not a controlling[] element in interpretation, and courts will disregard the punctuation of a statute . . . to give effect to what otherwise appears to be its purpose and true

---

[2](...continued)
(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

meaning'" (quoting *Barrett v. Van Pelt*, 268 U.S. 85, 91 (1925)). And "[c]ourts will not resort to grammatical niceties or the technicalities of punctuation in the interpretation and construction of an instrument, unless they may be utilized to make plain that which is otherwise obscure." *Hughes v. Samedan Oil Corp.*, 166 F.2d 871, 873 (10th Cir. 1948). Finally, the open-ended construction advocated by the Senior Kuykendalls would render the limiting provision "as enumerated in section 1920" meaningless. *See Lamb v. Thompson*, 265 F.3d 1038, 1051 (10th Cir. 2001) (stating that a "cardinal principle" of statutory construction is the "duty to give effect, if possible, to every clause and word of a statute"). It would permit a court to tax the loser with any cost associated with the litigation. Had Congress intended to provide such a general waiver of immunity, there is no doubt that it could have done so. *See Freesen v. Comm'r of Internal Revenue*, 89 T.C. 1123, 1130 (1987) (holding that "in the absence of clearly expressed legislative intent to the contrary" costs awarded under 28 U.S.C. § 2412(a)(1) are limited to those specified in 28 U.S.C. § 1920); *Wells Marine v. United States*, 1 Cl. Ct. 327, 328 (1983) (same).

Referring now to the phrase "but not including the fees and expenses of attorneys," the Senior Kuykendalls argue that the FTC's interpretation of the statute as limiting the recovery of costs to those listed in § 1920 renders the specific exclusion of attorney fees and expenses redundant to the extent that § 1920 does not include such costs. We think, however, that by specifically

excluding recovery of attorney fees and expenses Congress merely sought to make explicit that such fees were not recoverable as a matter of course against the United States. Rather, subsequent subsections prescribe the narrow circumstances in which the United States is susceptible to the imposition of fee liability. That is, the United States is liable "for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award," *see* 28 U.S.C. § 2412(b), and in cases in which the United States' position was not "substantially justified," *see* 28 U.S.C. § 2412(d)(1)(A).

Finally, the Senior Kuykendalls argue that the legislative history supports their interpretation of the statute. The legislative history reveals that the purpose of § 2412(a)(1) was to put "the private litigant and the United States on an equal footing as regards the award of costs to the prevailing party in litigation involving the Government." S. Rep. No. 89-1329 (1966). Since the prevailing party may recover against a private party the costs associated with a supersedeas bond, *see* Fed. R. App. P. 39(e)(3), so, too, should the prevailing party be able to recover such cost against the United States. Only in "rare and exceptional circumstances," however, can contrary legislative history rebut the "strong presumption that the plain language of the statute expresses congressional intent." *Ardestani*, 502 U.S. at 135 (internal quotation marks omitted). This is not such a case. Though the purpose of § 2412(a)(1) is to put the private litigant on equal

footing with the United States, the legislative history also makes clear that "[t]he costs which are referred to in this bill are listed in section 1920 of title 28, United States Code." S. Rep. No. 89-1329 (1966). Accordingly, we hold that those costs recoverable against the United States under 28 U.S.C. § 2412(a)(1) are those listed in § 1920 of that title.

We note that the Ninth Circuit has reached a contrary conclusion regarding the scope of costs that may be assessed to the United States under § 2412(a)(1). *See Commodity Futures Trading Comm'n v. Frankwell Bullion Ltd.*, 99 F.3d 299, 305 (9th Cir. 1996) (holding "that § 2412(a) authorizes any costs that could be assessed against an ordinary citizen"); *NORML v. Mullen*, 828 F.2d 536, 546 (9th Cir. 1987) (same); *see also United States v. Panhandle E. Corp.*, 696 F. Supp. 983, 986 (D. Del. 1988) (assuming in dicta that costs from a letter of credit would be taxable against the United States if the defendant's appeal was successful). The Ninth Circuit rested its decision on the fact that the language of the statute is not "explicitly exclusive" and on legislative history indicating that the purpose of the EAJA was to put the United States "on an equal footing" with private party litigants. *See NORML*, 828 F.2d at 546. In reaching a contrary conclusion, we are mindful that waivers of sovereign immunity must be strictly construed in favor of the United States. *See Ardestani*, 502 U.S. at 137. As such, we find the District Court abused its discretion in assessing the FTC with the cost to obtain a letter of credit.

### III. CONCLUSION

For the reasons stated above, the judgment of the District Court is AFFIRMED as to the decision not to award attorney fees, REVERSED as to its award for costs related to the letter of credit, and REMANDED for further proceedings consistent with this decision.