**UNITED STATES of America, Plaintiff,**

**v.**

**PANHANDLE EASTERN CORP., Panhandle Eastern Pipe Line Co., Trunkline Gas Co., Trunkline LNG Co., General Dynamics Corp., Moore McCormack Resources, Inc., Moore McCormack LNG Transport, Inc., Morgas, Inc., Pantheon, Inc., Pelmar Co., and Lachmar, a Delaware General Partnership, Defendants.**

**Civ. A. No. 87–190–JLL.**

United States District Court,
District of Delaware.

Sept. 23, 1988.

See also 693 F.Supp. 88.

the letters of credit," Exhibit B to Murray Affidavit at 2, such benefit will be largely illusory.

**984**

William C. Carpenter, Jr., U.S. Atty., Richard G. Andrews, Asst. U.S. Atty., Wilmington, Del., John R. Bollin, Asst. Atty. Gen., J. Christopher Kohn, Robert M. Hollis, Andrea Larry, Gregory A. Harrison, Attys., Civ. Div., Dept. of Justice, Washington, D.C., and Robert J. Patton, Jr., Richard Lorr and Jay Gordon, U.S. Maritime Admin., Dept. of Transp., Washington, D.C., of counsel, for plaintiff.

Lawrence A. Hamermesh and Vicki A. Hagel of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and Michael A. Joseph and E. Alex Blanton of Dyer, Ellis, Joseph and Mills, Washington, D.C., of counsel, for defendants Panhandle Eastern Corp., Panhandle Eastern Pipe Line Co., Trunkline Gas Co., Trunkline LNG Co., Morgas, Inc., Pantheon, Inc., Pelmar Co. and Lachmar.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

### I.  INTRODUCTION

Upon entry of a $139 million-plus judgment against defendants Trunkline LNG Co. and Trunkline Gas Company, they announced their intention to file an appeal and moved for a stay of execution of judgment pending appeal. In lieu of a traditional supersedeas bond (which would entitle defendants to a stay of execution as a matter of right under Fed.R.Civ.P. 62(d)), defendants have proposed an alternative arrangement to secure payment of the judgment pending appeal. (Docket Item ["D.I."] 130.)

The proposal relies upon the financial stability of the defendants' corporate parent—Panhandle Eastern Corporation ("Panhandle")—to guarantee payment of the judgment in the event that the appeal ultimately proves unsuccessful. Defendants contend that Panhandle's financial re-

sources are substantial, and that granting the proposal therefore would not jeopardize plaintiff's ability to recover the judgment if affirmed on appeal.

### II.  PANHANDLE'S FINANCIAL POSITION

As evidence of Panhandle's fiscal integrity, defendants' proposal includes a promise to maintain net worth at a level not less than three times the amount of the judgment. Net worth, however, is not the sole indicator of financial strength. A company's balance sheet may show assets comfortably in excess of liabilities, and yet that company might nevertheless be experiencing severe liquidity problems.

Panhandle's June 30, 1988 net worth is $1.123 billion. (D.I. 130 at 3.) However, its *current* liabilities of $634 million exceed *current* assets, which are only $553 million. (D.I. 130, Ex. C at 3.) This may very well indicate a potential problem for Panhandle in meeting its day-to-day obligations. Ordinarily, subject to variations among different industries, a current ratio[1] of at least 1.5 or 2 to 1 would be consistent with a healthy balance sheet. *See* R. Garrison, *Managerial Accounting: Concepts for Planning, Control, Decision Making,* 657 (rev. ed. 1979) ("[t]he general rule of thumb calls for a current ratio of 2 to 1"). Panhandle's current ratio as of June 30, 1988, is .87—well below the level generally considered safe.

The lion's share of Panhandle's assets are held in the form of plant, property and equipment. (*Id.* at 3.) Such assets likely are not readily marketable, further suggesting a potential liquidity problem.

Finally, it is noted that the foregoing financial information for Panhandle is as of June 30, 1988. It appears that the position reported in the financial statements will deteriorate during the current quarter, which ends September 30, 1988. Panhandle expects its net worth to drop by over $300 million this quarter as the result of a write-off to account for certain claims against the company. (D.I. 130 at 3.) This $300 million quarterly loss is greater than Panhandle's total revenues of $285 million

[1]  Current ratio is calculated by dividing current assets by current liabilities.

(even before deducting expenses) earned in the previous quarter, perhaps indicating that net worth will not soon return to its former level. (D.I. 130, Ex. C at 2.)

## III. PENDING LITIGATION

Notes 4–8 of the Form 10–Q (D.I. 130, Ex. C at pp. 6–16) extensively detail Panhandle's ongoing legal proceedings, and cast additional doubt on Panhandle's financial health. Particularly noteworthy is the following description of proceedings involving Panhandle subsidiaries PEPL and Trunkline:

> Since 1982, the combined effects of sharply reduced sales and increased deliverability from domestic reservoirs have resulted in *significant financial exposure* to PEPL and Trunkline under these take-or-pay provisions.
>
> \*   \*   \*   \*   \*   \*
>
> As of June 30, 1988, the unresolved exposure of take-or-pay claims for 1987 and prior years, estimated at *$639,000,000* for PEPL and *$62,400,000* for Trunkline, is the subject of ongoing negotiations.

D.I. 130, Ex. C at 9 (emphasis added). The stakes of these and other proceedings involving Panhandle and its affiliates are enormous. Based upon the uncertainties created by such litigation, it is significant to note that Panhandle's independent auditors qualified their audit opinion for the most recent fiscal year. (D.I. 132A at A–9.)

## IV. CREDIT RATING

The credit rating of Panhandle Eastern Pipe Line Company ("PEPL") (Panhandle's primary subsidiary which accounts for approximately 85% of Panhandle's assets) was recently downgraded to BBB– by Standard and Poor's.[2] Standard & Poor's top rating is AAA and is used very sparingly, followed by AA, A, BBB, BB, B, etc. Hence PEPL is classified in the fourth or fifth quality tier. While such a credit rating is somewhat indicative of a speculative investment, it by no means implies a com-

pany on the verge of bankruptcy. The BBB– rating appears far less risky than a "junk bond" investment, which would garner a credit rating probably in the "C" range.

## V. POSSIBLE REIMBURSEMENT

The driving force behind defendants' motion is the desire to avoid the "needless" expense, estimated to be $2 million, of obtaining a supersedeas bond. (D.I. 130 at 3–4.) Indeed if the appeal is unsuccessful, defendants will be out-of-pocket for the cost of obtaining the bond. If on the other hand the appeal succeeds, then defendants will recover this $2 million expenditure from their adversary, the United States. Fed.R.App.P. 39(a) ("if a judgment is reversed, costs shall be taxed against the appellee unless otherwise ordered"); Fed.R.App.P. 39(e) ("[c]osts incurred … for the determination of the appeal, [and for] the premiums paid for cost of supersedeas bonds or other bonds to preserve rights pending appeal … shall be taxed in the district court as costs of the appeal in favor of the party entitled to costs under this rule"); 28 U.S.C. § 2412(a) ("[e]xcept as otherwise specifically provided by statute, a judgment for costs … may be awarded to the prevailing party in any civil action brought by or against the United States"). *See also Bose Corp. v. Consumers Union of U.S., Inc.,* 806 F.2d 304, 305 (1st Cir. 1986) (cost of a letter of credit to secure a supersedeas bond was awarded to prevailing appellant in addition to the premiums paid for the supersedeas bond). Defendants urge the Court to grant their proposal, professing a need to prevent "waste of the taxpayers' money in the event that defendants are successful on appeal," because the United States would then be required to reimburse defendants for this cost. (D.I. 130 at 5.)

Contrary to defendants' contentions, the Court finds that the possibility of reimbursement argues against the proposal, not in favor of it. Counsel for the United

2. D.I. 130 at 3. Moody's, another credit rating service, similarly downgraded PEPL to a comparable rating of Baa3. *Id.*

States is certainly in a better position than defendants to guard the interest of taxpayers. The United States opposes the proposal. The United States apparently believes that the threat of having its $139 million judgment go unsatisfied is more serious than the alternative risk of "wasting" $2 million of taxpayers' money. Conversely, if defendants' arguments on appeal are without merit and the appeal fails, then the defendants ought to bear the financial burden of the appeal, including the cost of the supersedeas bond.

## VI. CONCLUSION

The question of whether to approve or deny defendants' proposal is within the Court's discretion. *See, e.g., Federal Prescription Service, Inc. v. American Pharmaceutical Ass'n*, 636 F.2d 755, 758–60 (D.C.Cir.1980); *Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979) ("the court may ... exercise a discretion to substitute some form of guaranty of judgment responsibility for the usual supersedeas bond"). A high priority of the Court should be to ensure the collectability of plaintiff's judgment. Error, if at all, should be on the side of protecting plaintiff's stake.

Defendants bear the burden of justifying a departure from the ordinary requirement of a supersedeas bond. *Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d at 1191 ("[i]f a court chooses to depart from the usual requirement of a full security supersedeas bond to suspend operation of an unconditional money judgment, it should place the burden on the moving party to objectively demonstrate the reasons for such a departure"); *United States v. Kurtz*, 528 F.Supp. 1113, 1115 (E.D.Pa.1981) ("[O]nly 'extraordinary circumstances' will support the provision of security other than a supersedeas bond.... It is the appellant's burden to demonstrate objectively that posting a full bond is impossible or impracticable....."). *See also Federal Prescription Service, Inc. v. American Pharmaceutical Ass'n*, 636 F.2d at 760 ("a full supersedeas bond should be the requirement in normal circumstances, such as

where there is *some reasonable likelihood of the judgment debtor's inability* or unwillingness *to satisfy the judgment* in full upon ultimate disposition of the case and where posting adequate security is practicable" [emphasis added] ).

The Court, therefore, finds that the defendants did not meet their burden, and their proposal was denied. The discussion above highlighting defendants' financial position, pending legal proceedings and mediocre credit rating raises at least a reasonable uncertainty as to whether the judgment will be satisfied upon conclusion of the appeal. It is also relevant that defendants are not without recourse. They have every right to obtain a conventional supersedeas bond as contemplated by Fed.R. Civ.P. 62(d), and to then have their arguments heard on appeal. Accordingly, for all these reasons defendants' motion was denied by the order entered on September 23, 1988.