FILED
United States Court of Appeals
Tenth Circuit

April 19, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

BANNER BANK, successor by merger of American West Bank which formerly did business in Utah as Far West Bank,

     Plaintiff Counter Defendant - Appellant,

v.

JAMES M. SMITH, a Utah resident; LOREE C. SMITH, an individual,

     Defendant Counterclaimants - Appellees.

No. 19-4131
(D.C. No. 2:12-CV-00763-CW)
(D. Utah)

_____

**ORDER**

_____

Before **HARTZ**, **PHILLIPS**, and **EID**, Circuit Judges.

_____

This matter is before us on (1) Appellant's _Petition for Rehearing Seeking Clarification and Correction of Certain Statements_ ("Petition"), and (2) a February 23, 2022 letter from counsel for Appellant requesting two of the same clarifications requested in the Petition. Upon careful consideration, we direct as follows.

As an initial matter, we construe the aforementioned letter as a motion to clarify or correct the court's February 7, 2022 opinion. So construed, the motion is GRANTED. In

addition, the Petition is GRANTED IN PART to the extent of the modifications in the attached revised opinion.

The Clerk's Office will replace the original opinion with the attached revised opinion effective *nunc pro tunc* to the date the original opinion was filed. The remainder of the relief sought in the Petition is DENIED.

Entered for the Court,

CHRISTOPHER M. WOLPERT, Clerk

FILED
United States Court of Appeals
Tenth Circuit

February 7, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

BANNER BANK, successor by merger of American West Bank which formerly did business in Utah as Far West Bank,

     Plaintiff Counter Defendant - Appellant,

v.

JAMES M. SMITH, a Utah resident; LOREE C. SMITH, an individual,

     Defendant Counterclaimants - Appellees.

No. 19-4131

_____

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:12-CV-00763-CW)**

_____

Steven W. Call, Ray Quinney & Nebeker P.C., Salt Lake City, Utah (Jonathan A. Dibble, Ray Quinney & Nebeker P.C., Salt Lake City, Utah, with him on the briefs), for Plaintiff Counter Defendant - Appellant.

Robert D. Drummond, Jr., Robert D. Drummond, Jr. Law Office, Fairhope, Alabama (Dallis Nordstrom Rohde, Carman Lehnhof Israelsen LLP, Salt Lake City, Utah, with him on the briefs), for Defendant Counterclaimants - Appellees.

_____

Before **HARTZ**, **PHILLIPS**, and **EID**, Circuit Judges.

_____

**EID**, Circuit Judge.

_____

Banner Bank ("Banner") provided a multimillion-dollar loan to James and Loree Smith and their business entities.[1]  As collateral, James Smith pledged several properties.  Banner later contracted to release Loree Smith from all actions associated with the loan.  When the loan entered default, Banner named Loree in this diversity action to foreclose on the collateral, notwithstanding the release.  Loree brought a successful breach of contract counterclaim and recovered attorneys' fees through Utah's bad-faith fee-shifting statute.  *See* Utah Code Ann. § 78B-5-825.  After finding Loree satisfied every statutory requirement, the district court issued a judgment awarding $105,550 in fees to Loree.  Banner appeals, arguing that every prong of the bad-faith statute is unmet and the fee award was unreasonable.  We also asked the parties to brief the question whether the judgment below is final.  Finding that it is, we exercise our jurisdiction under 28 U.S.C. § 1291.  We do not reach any of Banner's specific statutory arguments but reverse the fee award for a more fundamental reason.  Section 78B-5-825 is a procedural attorneys' fees statute, so it cannot be used to recover fees when a federal court sits in diversity.

## I.

James Smith owned a business: Real Estate Investor Support ("REIS").  James Smith also owned real and personal property across the United States, some of which his ex-wife Loree Smith co-owned.  Banner's predecessor loaned money to REIS.  As part of the agreement, REIS gave Banner a promissory note worth $2.3 million in

---

[1] Banner Bank is the successor by merger of AmericanWest Bank, which formerly did business in Utah as Far West Bank.

July 2009. James personally guaranteed the loan and signed a Deed of Trust that put up several properties in Oregon (eleven parcels of land, called the Eleven Parcels, and a condominium, called Unit 7) as collateral. The Eleven Parcels were solely owned by James, while Unit 7 was at that time jointly owned by James and Loree.

James signed the document but Loree refused. Banner accepted the deed anyway and tried to record it in Oregon. The county recorder's office rejected the filing because Loree had not signed it.

Banner revised the trust deed in September 2010 to remove Unit 7 from the property securing the loan and delete Loree's name and signature block. James signed the revised deed but only sent Banner an electronic copy of the signature page, retaining the original. Banner did not receive or record the revised deed of trust.

Meanwhile, in December 2010, REIS, James, and Loree sold REIS's assets to Real Estate Investor Education ("REIE"). REIE agreed to assume the Banner loan. It also agreed to release Loree from any lawsuits that might arise in connection with it. The release states:

> In consideration of this Agreement, the Borrower and Lender, on behalf of themselves, their successors, assigns, legal representatives (collectively and individually, the "**Releasing Parties**"), hereby fully, finally and completely RELEASE and FOREVER DISCHARGE Loree Smith of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, debts, liens, actions and causes of action of any and every nature whatsoever relating to the Loan.
>
> Aplt. App'x Vol. I at 150.

REIE defaulted in March 2011. James, the guarantor, did not make any payments on the loan. Banner's only recourse was the property James pledged, so it "determined that it needed to record the defective Deed of Trust." Aplt. App'x Vol. IV at 846. Through previous counsel, Banner made multiple changes to the original, defective deed using pen, pencil, and white-out. In July 2011, Banner recorded the altered document.

In August 2012, Banner filed this action against REIS, REIE, JMS Marketing, James, Loree, and ten John Does to enforce the loan and foreclose on James's interest in the Eleven Parcels and Unit 7.[2] To foreclose on solely James's interest, Banner sought a declaratory judgment that Loree did not hold any interest in the collateral. Loree, as a third-party beneficiary of the release, brought several counterclaims, including breach of contract, against Banner. James also brought counterclaims. Banner attached a copy of the trust deed to its complaint, but the copy did not contain the alterations described above. The alterations were likewise not visible in the copy certified by the Oregon county, or in any copy provided during discovery.

The district court ruled that all defendants except Loree were liable for the loan amount. In 2014, the court entered default judgments against REIS, REIE, and JMS Marketing. Then, in 2017, the district court entered summary judgment against James, holding him liable for the same sum. However, the court declined to enter summary judgment on the issue of foreclosing on the Oregon property because of

---

[2] The district court properly invoked its diversity jurisdiction because the parties were of diverse citizenship. *See* 28 U.S.C. § 1332.

factual disputes concerning the altered deed. In that same order, the district court rejected all counterclaims brought by James and Loree except Loree's counterclaim for breach of contract, on which it reserved judgment.

In December 2014, Loree obtained sole ownership of Unit 7 pursuant to a final order entered in the Smiths' Florida divorce case. In 2017, Banner released its interest in Unit 7, so the sole pending claim against James concerned only the Eleven Parcels he owned in full. The other claim remaining at that point was Loree's counterclaim for breach of contract.

The district court held a three-day bench trial on the two remaining claims in June 2017. Banner produced the original altered version of the trust deed for the first time in this litigation on the second day of trial. The parties submitted written closing arguments and the court scheduled a hearing for October 2017. On September 5, 2017, James filed for bankruptcy. As a result, the district court stayed the case. *See* 11 U.S.C. § 362(a). Later, as the court explained in a 2019 order, "the Trustee in James's bankruptcy proceeding abandoned the Oregon Properties, thereby mooting Banner Bank's request for an order to foreclose on the Eleven Parcels." Aplt. App'x Vol. IV at 842. With the foreclosure claim moot, that left only one cause of action: Loree's counterclaim for breach.

The district court ruled that Loree prevailed on her breach of contract counterclaim because Banner sued her despite their unambiguous release agreement. The court explained that "[w]hile Banner Bank [wa]s certainly within its legal rights to foreclose on property for which it ha[d] a secured interest[,] . . . the existence of

5

this right does not negate the legal consequences to Banner Bank for violating its promise to release Loree from such a controversy." *Id.* at 853.

Although Banner's notice of appeal encompasses the district court's decision on Loree's counterclaim, Banner does not directly challenge that ruling. Instead, Banner challenges the attorneys' fees Loree recovered under Utah's bad-faith fee-shifting statute. *See* Utah Code Ann. § 78B-5-825. The statute requires awarding "reasonable" attorneys' fees to a "prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." *Id.* § 78B-5-825(1). The statute contains exceptions that are not relevant to this appeal.

Loree's breach of contract counterclaim is governed by Utah law. Utah follows the American Rule that attorneys' fees are typically not recoverable, win or lose, unless law or contract provides otherwise. *See USA Power, LLC v. PacifiCorp*, 372 P.3d 629, 662 (Utah 2016). The Utah Supreme Court has not, it seems, addressed whether and when fees may be recovered as damages for breach of a release agreement, which some jurisdictions treat differently. *See* Sonja A. Soehnel, Annotation, *Recovery of Attorneys' Fees and Costs of Litigation Incurred as Result of Breach of Agreement Not to Sue*, 9 A.L.R. 5th 933 (1993) (surveying different approaches).

Leading up to trial, Loree sought to recover attorneys' fees as direct damages for Banner's alleged breach of the release. *See* Defs.' Resp. in Opp'n to Banner Bank's Mot. to Alter and Amend at 4, *Banner Bank v. Real Estate Investor*

6

*Education, LLC, et al.*, No. 2:12-CV-00763-CW (D. Utah) (May 11, 2017), ECF No. 219 ("[A]ttorney's fees, as well as other costs and expenses, incurred by Loree Smith are the damages as a result of a Breach of the Consent, Waiver and Release Agreement and are recoverable . . . because they are in and of themselves, in part, the damages as a direct result of Banner's breach.").[3]  Loree's pretrial brief likewise said nothing about claiming fees under the Utah statute.  *See* Aplt. App'x Vol. IV at 796.  At trial, however, Loree suggested she sought fees under both Utah statutory law and the district court's inherent powers.  *See* Redacted Tr. at 13, *Banner Bank*, No. 2:12-CV-00763-CW (Aug. 8, 2017), ECF No. 251.  In her closing brief, Loree formalized this request by invoking § 78B-5-825.  *See* Loree Smith's Br. as to Closing Arg. at 3, *Banner Bank*, No. 2:12-CV-00763-CW (Aug. 10, 2017), ECF No. 254.

The district court awarded attorneys' fees under the Utah statute, concluding that Banner's action against Loree was both meritless and brought in bad faith.  In a later order, the court rejected Banner's argument that Loree was not a "prevailing party" under Utah law as she failed to satisfy the damages element of her breach claim.  The court explained that the release's "obvious" and "sole[] purpose" was "ensur[ing] that Loree was released and protected from 'any and all' legal claims 'of any and every nature whatsoever relating to the Loan.'"  Aplt. App'x Vol. V at 1068 (quoting release).  "[T]he natural result of Banner Bank's breach was that Loree had

---

[3] We take judicial notice of arguments made in certain district court documents that do not appear in the record compiled by the parties.  *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979).

7

to hire an attorney to defend her against Banner Bank's claims," so her attorneys' fee claim was "a proper assertion of direct damages for a breach of contract." *Id.* (internal quotation marks omitted).

The district court reduced its initial fee award because of Loree's lawyer's travel time and entered judgment against Banner for her remaining attorneys' fees in the amount of $105,550. Banner timely appealed. Banner contests all three prongs of the fee statute as well as the reasonableness of the fee award. We also asked the parties to provide supplemental briefing on whether we have jurisdiction under the final judgment rule. *See* 28 U.S.C. § 1291.

## II.

We begin with finality, which determines our jurisdiction. Under the final judgment rule, we have jurisdiction over "appeals from all final decisions of the district courts." *Id.* To be final, a district court's "decision must reflect the termination of all matters as to all parties and causes of action." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (internal quotation marks omitted). The judgment below was final with respect to all parties and claims.

Banner's case had five defendants: REIS, REIE, JMS Marketing, James, and Loree. The latter two brought counterclaims. Finality is apparent with respect to all parties and claims. First, the district court's 2014 default judgments against REIS, REIE, and JMS Marketing terminated the proceedings with respect to those defendants. Next, in 2017, the district court rejected all claims by and against Loree

8

except her breach of contract counterclaim.  Upon adjudicating that counterclaim in 2019, all claims involving Loree were also resolved.

In 2017, the district court granted summary judgment against James on Banner's claim that he was liable as a guarantor and on James's counterclaims. Citing factual disputes, the court declined to enter summary judgment on Banner's attempt to foreclose on the Oregon properties.  Around that time, Banner released its interest in the condominium, so the foreclosure claim only concerned the Eleven Parcels owned by James.  Then James filed for bankruptcy and the district court halted proceedings.  Shortly thereafter, however, the estate abandoned the Eleven Parcels, so Banner had nothing to go after.  The district court explicitly recognized that this terminated Banner's remaining claim against James, explaining in a 2019 order that "the Trustee in James's bankruptcy proceeding abandoned the Oregon Properties, thereby mooting Banner Bank's request for an order to foreclose on the Eleven Parcels." Aplt. App'x Vol. IV at 842.  That ended the proceedings with respect to James.

All claims against all parties were thus resolved or deemed moot by the district court before Banner appealed, so the judgment is final and we have jurisdiction under 28 U.S.C. § 1291.  The only claim on which the district court granted relief was Loree's counterclaim for breach of contract, to the extent the court awarded fees under § 78B-5-825.  We turn to that issue now.

**III.**

9

The district court awarded fees under Utah's bad-faith statute, which provides that "[i]n civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." Utah Code Ann. § 78B-5-825(1). On appeal, "[w]e review a district court's award of attorney fees for abuse of discretion." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 459 (10th Cir. 2017). Our task "includes review de novo of the legal principles underlying the fee award—such as the choice of whether to apply state or federal law." *Id.* In a diversity case like this, the *Erie* doctrine requires federal courts to apply federal procedural law and state substantive law. *See Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). That means we cannot reach Banner's arguments about Utah's bad-faith statute unless we determine it was proper for the district court, sitting in diversity, to award fees pursuant to the statute in the first place. It is therefore immaterial that neither party has raised the *Erie* issue. As the Supreme Court has made clear, "a court may consider an issue 'antecedent to . . . and ultimately dispositive of' the dispute before it, even an issue the parties fail to identify and brief." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993) (quoting *Arcadia v. Ohio Power Co.*, 498 U.S. 73, 77 (1990)). Whether the district court's fee award was appropriate under *Erie* is precisely such an antecedent issue. *Cf. Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273, 1277 (10th Cir.

2011) ("[In a case] grounded on diversity jurisdiction, we are obligated by the *Erie* doctrine to apply . . . federal procedural law.").

For *Erie* purposes, we have "distinguish[ed] between two different types of attorney fees, depending on the basis for the fee award": substantive fees and procedural fees. *Chieftain Royalty Co.*, 888 F.3d at 460. "If the statute is procedural, federal law applies, but if it is substantive, then the court must follow the law of the forum state." *Scottsdale Ins. Co.*, 636 F.3d at 1279. "Substantive fees are part and parcel of the cause of action over which we have diversity jurisdiction," while procedural fees "ha[ve] nothing to do with the nature of the cause of action and do[] not derive in any way from state substantive law." *Chieftain Royalty Co.*, 888 F.3d at 460. Put another way, "[s]ubstantive fees are those which are tied to the outcome of the litigation, whereas procedural fees are generally based on a litigant's bad faith conduct in litigation." *Scottsdale Ins. Co.*, 636 F.3d at 1279 (internal quotation marks omitted). We draw this distinction from the Supreme Court's observation that, in diversity cases, a "state law denying the right to attorney's fees or giving a right thereto, *which reflects a substantial policy of the state*, should be followed." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975) (emphasis added); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 52 (1991) (clarifying that, under *Alyeska*, federal courts should only apply state "fee-shifting rules that embody a substantive policy, such as a statute which permits a prevailing party in certain classes of litigation to recover fees").

11

With these principles in mind, we proceed to decide whether Utah's bad-faith statute is procedural or substantive, and whether it conflicts with valid federal law. Starting with whether § 78B-5-825 is procedural or substantive, a bad-faith fee-shifting statute like Utah's is the quintessential procedural attorneys' fees statute. *See Scottsdale Ins. Co.*, 636 F.3d at 1279 ("[P]rocedural fees are generally based on a litigant's bad faith conduct in litigation.") (internal quotation marks omitted); *Chieftain Royalty Co.*, 888 F.3d at 460 ("[A]n attorney-fee award against bad-faith conduct in the litigation has nothing to do with the nature of the cause of action and does not derive in any way from state substantive law."). Utah's statute is no different. It applies in all "civil actions." Utah Code Ann. § 78B-5-825(1). It embodies no apparent substantive policy judgment concerning certain kinds of claims. Rather, it polices the general conduct of litigation in the state's courts. That renders it a core procedural provision. *See Chambers*, 501 U.S. at 52 ("[N]either of [*Erie*'s] twin aims" of "discouragement of forum-shopping and avoidance of inequitable administration of the laws . . . is implicated by the assessment of attorney's fees as a sanction for bad-faith conduct.").

It is true that § 78B-5-825's fees are only available to prevailing parties and we have previously held a different Utah prevailing-party fee-shifting provision to be substantive and thus applicable in diversity. *See Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1239 (10th Cir. 2018). In *Xlear*, we reasoned that a provision of the Utah Truth in Advertising Act (UTIAA) "award[ing] attorneys' fees to the prevailing party" in UTIAA cases turned upon "an outcome-based reason for awarding fees that

12

is part and parcel of the state law cause of action," making it substantive. *Id.* Critically, the fee-shifting provision in *Xlear* was tied to the UTIAA. *See id.* That suggested the statute embodied a substantive judgment about a particular class of claim, specifically UTIAA claims. In contrast, § 78B-5-825 applies to all civil litigation. More importantly, prevailing is insufficient to receive fees under § 78B-5-825. Rather, the statute's primary focus is on a claim's merit and a litigant's bad faith. That renders it procedural under our precedents. *See Boyd Rosene and Assocs., Inc. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1125–26 (10th Cir. 1999) ("This court recognizes a distinction, as do other courts and commentators, between loser-pays attorney's fees, that is, attorney's fees awarded to a party simply because it prevailed, and attorney's fees assessed for a willful violation of a court order or against a losing party who acted in bad faith, vexatiously, wantonly, or for oppressive reasons.").

Turning to conflict, Utah's bad-faith statute instructs a district court to award fees to a prevailing party if it finds a claim or defense meritless and brought in bad faith. *See* Utah Code Ann. § 78B-5-825. That plainly conflicts with federal procedure. As the Fifth Circuit has explained, any procedural statute authorizing a fee award automatically conflicts with "federal policy," specifically with the American Rule that parties bear their own fees and costs in court. *Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 412 (5th Cir. 2006). The validity of the American Rule in federal court cannot be seriously questioned.

13

The Utah statute thus also conflicts with equally valid exceptions to the American Rule—sanctions under Rule 11 and a federal court's inherent power to punish bad faith by shifting fees. *See* Fed. R. Civ. P. 11; *Chambers*, 501 U.S. at 45–46. The problem is that § 78B-5-825 imposes a rival regime for bad-faith fee-shifting that is beholden to the Utah Supreme Court's definition of bad faith. *Compare Pinder v. Duchesne Cty. Sheriff*, 478 P.3d 610, 630 (Utah 2020) ("To find that a party acted in bad faith [under § 78B-5-825], the court must conclude that at least one of the following factors existed: (i) The party lacked an honest belief in the propriety of the activities in question; (ii) the party intended to take unconscionable advantage of others; or (iii) the party intended to or acted with the knowledge that the activities in question would hinder, delay, or defraud others.") (quoting *Migliore v. Livingston Fin., LLC*, 347 P.3d 394, 403 (Utah 2015)), *with Nikols v. Chesnoff*, 435 F. App'x 766, 773 (10th Cir. 2011) (unpublished[4]) (noting that "the standards for the Utah fee shifting statute [§ 78B-5-825] and Rule 11 are not the same"), *and Mountain W. Mines, Inc. v. Cleveland-Cliffs Iron Co.*, 470 F.3d 947, 954 (10th Cir. 2006) (noting that the Tenth Circuit "sets a high bar for bad faith awards" under the American Rule's bad-faith exception by "insist[ing] that a trial judge make a finding of bad intent or improper motive"). Because these federal procedures are not controlled by the Utah definition of bad faith that covers § 78B-5-825, they cannot

---

[4] Unpublished cases are not binding precedent, but we consider them for their persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

14

coexist with the Utah statute.[5]  *See Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 7 (1987) ("[T]he purposes underlying the [federal procedure] are sufficiently coextensive with the asserted purposes of the [state] statute to indicate that the [federal procedure] occupies the statute's field of operation so as to preclude its application in federal diversity actions.").

This conflict between competing procedural rules—federal and state—means that Utah's law has no application in federal court.  The federal procedure is "'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' . . . thereby leaving no room for the operation of" Utah Code Ann. § 78B-5-825.  *Id.* at 4–5 (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749 (1980)).  As a result, § 78B-5-825 is displaced in the federal system and district courts sitting in diversity cannot award fees under it.  *See Taylor v. Nat'l Collegiate Student Loan Tr. 2007-1*, Case No. 2:19-CV-00120-BSJ, 2021 WL 872494 (D. Utah Mar. 9, 2021) ("[T]he Tenth Circuit has explained that in diversity cases, fees that are based on a litigant's bad faith conduct are procedural fees and are thus governed by the federal rules . . . [so § 78B-5-825 is] inappropriate to justify [a] sanction . . . for bad faith.") (citing *Chieftain Royalty Co.*, 888 F.3d at 460–61).

It is true that we have previously, albeit without any *Erie* analysis, affirmed a fee award under § 78B-5-825.  *See Cascade Energy and Metals Corp. v. Banks*, 896

---

[5] We do not consider affirming the fee award on the basis of these federal alternatives because both are rooted in a district court's discretionary determinations about litigants' conduct.

15

F.2d 1557, 1579 (10th Cir. 1990). But intervening precedent clarifying the interplay between attorneys' fees and *Erie* doctrine demands a fresh look at whether the district court appropriately awarded fees. *See Chambers*, 501 U.S. at 52; *Chieftain Royalty Co.*, 888 F.3d at 460–61. Having taken that look, we conclude the decision below must be reversed and the fee award pursuant to § 78B-5-825 vacated. Our opinion is limited to the *Erie* problems raised by applying § 78B-5-825, a state procedural statute, in a diversity case. On remand, the district court remains able to award fees pursuant to the bad-faith exception to the American Rule or the sanctioning mechanism of Rule 11. Recalling how Loree briefed the case before trial, state law may also permit an award of attorneys' fees as breach of contract damages. *See, for example, Dallas Gas Partners, L.P. v. Prospect Energy Corp.*, 733 F.3d 148, 158 (5th Cir. 2013). We express no opinion on these options or the propriety of the district court's legal conclusions and fee calculations under § 78B-5-825.

**IV.**

For the reasons above, we REVERSE the district court's award of attorneys' fees under § 78B-5-825 and REMAND for further proceedings.

16