FILED
**United States Court of Appeals**
**Tenth Circuit**

**June 1, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

BANNER BANK, successor by merger of
AmericanWest Bank which formerly did
business in Utah as Far West Bank,

      Plaintiff Counterclaim Defendant -
      Appellant,

v.

JAMES M. SMITH, a Utah resident;
LOREE C. SMITH, an individual,

      Defendants Counterclaim Plaintiffs -
      Appellees.

No. 25-4030
(D.C. No. 2:12-CV-00763-CW)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH**, **EID**, and **CARSON**, Circuit Judges.

_____

Banner Bank appeals the district court's award of attorneys' fees after it lost a

breach of contract dispute with Loree Smith. This is the Bank's second appeal on the

issue. In the first appeal we vacated the award of fees because we concluded the

district court should have applied federal law in making the award, not state law.

*Banner Bank v. Smith*, 30 F.4th 1232 (10th Cir. 2022).

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
10th Circuit Rule 32.1.

On remand, the district court re-affirmed its finding that Banner Bank pursued claims against Ms. Smith in bad faith and awarded attorneys' fees under the *federal* bad-faith exception to the American Rule. In the alternative, the court awarded attorneys' fees as direct damages for Banner Bank's breach of an agreement releasing Ms. Smith from certain suits.

Exercising jurisdiction under 28 U.S.C. § 1291, we **AFFIRM** the district court's award of attorneys' fees. The district court adequately supported the award of fees for bad faith.

## I.    Background

### A.    *Banner Bank I*

In *Banner Bank I*, the district court oversaw a trial concerning real-estate foreclosures in Oregon. Banner Bank sought to foreclose on 12 parcels of Oregon land that James Smith had pledged as collateral for a 2009 loan borrowed from the Bank's predecessor in interest.

Because Mr. Smith was an owner of the company that took out the 2009 loan, he personally guaranteed the loan. He also offered as collateral 12 parcels of land in Oregon. One of those parcels—Unit 7—was a developed parcel and jointly owned by Mr. Smith and his then-wife, Loree Smith, as tenants in the entirety. Ms. Smith, however, refused to sign the Deed of Trust that would pledge as collateral the jointly owned parcel and the other 11 parcels. Without recording the defective Deed of Trust, the Bank funded the loan.

In 2010, Mr. Smith and the Bank's predecessor entered into a Release Agreement that "RELEASE[D] and FOREVER DISCHARGE[D] Loree Smith of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, debts, liens, actions and causes of action of any and every nature whatsoever relating to the Loan." App. 840.

In 2011, the loan went into default. Banner Bank attempted to record the Deed of Trust, which lacked Ms. Smith's signature, but the county office rejected the Deed. After consulting with the county office about how to make the Deed recordable, counsel for the Bank crossed out Ms. Smith's signature block on the Deed. The Bank then recorded the altered Deed.

In 2012, Banner Bank sued to foreclose the 11 parcels and Mr. Smith's interest in Unit 7. As part of its suit, the Bank sought a declaratory judgment that Ms. Smith did not hold any interest in the 11 parcels. Ms. Smith filed a motion to dismiss and then an answer requesting that the underlying Deed be canceled. She asserted counterclaims for slander of title, civil conspiracy, abuse of process, and breach of the Release Agreement. Mr. Smith also raised counterclaims against the Bank, alleging improper securitization of pledged property and breach of contract regarding the sale of intellectual property.

After discovery, in 2015, the Bank moved for summary judgment on all the counterclaims. In February of 2017, upon the prompting of the court, the Bank released its interest in Unit 7 and partially reconveyed the Deed to Ms. Smith, dropping its claim to foreclose on that property. The court then granted Banner Bank

3

summary judgment on Mr. Smith's liability under the Deed and on all Ms. Smith's counterclaims except the breach-of-Release claim. It also dismissed with prejudice Mr. Smith's counterclaims and determined that the Bank's claim for declaratory relief regarding Ms. Smith's interest in the 11 parcels was moot.

At trial in June, Banner Bank sought to foreclose on the Deed for the remaining 11 parcels, and Ms. Smith counterclaimed that the Bank had breached the Release Agreement. When the Deed of Trust was offered into evidence on the second day of trial, additional alterations were discovered. Some alterations were visible on this Deed—a series of numbers written on the top of the first page and later whited out, and a note written and erased in the right-hand corner—that were not visible in the copies produced before trial. These alterations were not visible on the copies attached to the complaint, recorded at the county office, produced in pre-trial disclosures, or used in depositions. The other Deed alterations—namely, the crossing out of Ms. Smith's signature block and the notary acknowledgement, as well as the numbers "132" written on the upper left-hand corner of the first page in blue ink— were visible on the aforementioned copies.

Because Mr. Smith filed for bankruptcy before closing arguments, Banner Bank's foreclosure claim was mooted and the primary issue before the court became Ms. Smith's counterclaim for breach of the Release Agreement. In addition to her counterclaim, Ms. Smith pursued attorneys' fees under the bad-faith exception to the American Rule regarding attorneys' fees.

The district court concluded that the Bank breached the Release twice over. It found that Banner Bank breached the Release (1) by bringing the claim for declaratory relief against Ms. Smith and (2) by seeking to foreclose on Mr. Smith's interest in Unit 7, because both were "claims . . . of any and every nature whatsoever relating to the Loan." *Id.* at 840. Additionally, the district court concluded that Banner Bank acted in bad faith for several reasons:

1. The Bank "asserted this action against Loree in clear violation of [the Release] conditions" and opposed her motion that she be dismissed. *Id.* at 857.

2. The Bank "conceal[ed]" "the [d]iscovered [a]lterations until the second day of trial[,] substantially disadvantage[ing] Loree by limiting how Loree could pursue her case." *Id.* at 859.

3. The Bank "took advantage of Loree by moving to dismiss her claims and by continuing to pursue the foreclosure and sale of Unit 7 without disclosing" the discovered alterations. *Id.*

The court granted $105,550 in attorneys' fees under Utah's bad-faith statute, Utah Code § 78B-5-825(1). This amount reflects an $18,000 reduction the court granted upon Banner Bank's objection to inadequacies in opposing counsel's fee affidavit.

On appeal, we reversed the district court's award of attorneys' fees because the award was improper under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). *Banner Bank*, 30 F.4th at 1241. *Erie* required the district court, as a court sitting in diversity, to apply federal procedural law and state substantive law, but the court

erroneously applied Utah's procedural attorneys'-fee statute. We remanded to the district court for it to determine whether attorneys' fees were appropriate under Ms. Smith's other preserved theories—namely, under the federal bad-faith exception or as direct damages for breach of contract.

### B.     *Banner Bank II*

On remand, the district court concluded that Ms. Smith was entitled to attorneys' fees on two alternative grounds. It awarded the same attorneys' fees as in *Banner Bank I* (1) under the federal bad-faith exception to the American Rule, and (2) as direct damages from the Bank's breach of the Release Agreement. In doing so, the court adopted the findings of bad faith that it had made in *Banner Bank I* in the context of Utah's bad-faith statute and applied them to the federal bad-faith framework.

## II.     Discussion

Banner Bank raises three issues on appeal from *Banner Bank II*. It challenges (1) the factual findings underlying the court's award for bad faith, (2) the legal basis for the court's alternative award as direct damages, and (3) the reasonableness of the award based on alleged inadequacies in the affidavit of Ms. Smith's counsel.

### A.     *Legal Framework*

We review the district court's determination that a litigant has acted in bad faith, as with other factual findings, for clear error. *FTC v. Kuykendall*, 466 F.3d 1149, 1152 (10th Cir. 2006). And we review the district court's award of attorneys' fees for abuse of discretion. *Chieftain Royalty Co. v. Enervest Energy Institutional*

*Fund XIII-A, L.P.*, 888 F.3d 455, 459 (10th Cir. 2017).  The court's award "will not be disturbed" unless we have "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Jensen v. W. Jordan City*, 968 F.3d 1187, 1200–01 (10th Cir. 2020) (quoting *Somerlott v. Cherokee Nation Distribs, Inc.*, 686 F.3d 1144, 1152 (10th Cir. 2012)).

Since this is a diversity case, we apply federal law to evaluate attorneys' fees that are awarded, as here, "based on a litigant's bad faith conduct in litigation." *Chieftain*, 888 F.3d at 460 (quoting *Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273, 1279 (10th Cir. 2011)).  Because we focus our analysis on the district court's award based on Banner Bank's bad-faith conduct in litigation, and not its alternative award of attorneys' fees as direct damages under Utah law, we discuss the governing federal law.

The federal bad-faith exception to the American Rule permits attorneys' fees when a party acts in "subjective bad faith." *Kuykendall*, 466 F.3d at 1152.  The bad-faith exception is narrow—there must be clear evidence that the challenged claim is "entirely without color *and* has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." *Id.* (quoting *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1201 (10th Cir. 2005)).  The test is "conjunctive—it requires clear evidence of *both* a complete lack of color *and* an improper purpose." *Id.* at 1153.  "[A] claim lacks a colorable basis when it is utterly devoid of a legal or factual basis." *Freecom Commc'ns*, 401 F.3d at 1201 (quoting *Schlaifer Nance & Co. v. Est.*

7

*of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999)). A claim is colorable, however, "when it has some legal and factual support, considered in light of the reasonable beliefs of the party making the claim." *Id.* (citation modified). Consequently, a "weak or legally inadequate case" does not suffice to show that a claim lacks color. *Kuykendall*, 466 F.3d at 1152 (quoting *United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481, 1488 (10th Cir. 1984)). An award under the exception is "only appropriate 'in exceptional cases and for dominating reasons of justice.'" *Id.* (quoting *Boned Beef*, 726 F.2d at 1488).

Whether evaluating the fees awarded under federal or state law, the fees must be a reasonable amount. Under federal law, we presume that the lodestar calculation produces a reasonable fee. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar calculation, which the court below performed, multiplies the number of hours counsel "reasonably expended" by counsel's "reasonable hourly rate." *Robinson*, 160 F.3d at 1281 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). To determine a counsel's hours reasonably expended, the court may look to (1) whether the task is normally billed, (2) the number of hours on each task, (3) the case complexity, (4) the number of reasonable strategies followed, (5) responses necessitated by the opposing side, and (6) duplicative work. *Id.* (citing *Ramos v. Lamm,* 713 F.2d 546, 554 (10th Cir. 1983)). The court may reduce the number of hours expended if the attorney "fails to keep 'meticulous, contemporaneous time records' that reveal 'all hours for which compensation is requested and how these hours were allotted to specific tasks.'" *Id.* (quoting *Ramos*, 713 F.2d at 553).

### B.    Attorneys' Fees under the Federal Bad-Faith Exception

Banner Bank urges that the district court's findings of bad faith are clearly erroneous and therefore cannot support an award under the federal bad-faith exception.  But the Bank fails to show clear error.

First, the court concluded that the Bank brought the claim in bad faith because the Bank "lacked an honest belief in the propriety of its request for declaratory judgment" since the Release clearly and "strictly prohibited the very action that Banner Bank took."  App. 857 (citation modified).  Not only did the Bank knowingly violate the Release, but the district court concluded that it acted in bad faith because it brought the claim knowing that it had no factual basis for seeking the declaration—a finding supporting the first prong of the bad-faith exception, that the claim lacked a colorable basis.  *See Freecom Commc'ns*, 401 F.3d at 1201 (stating that a claim is colorable "when it has some legal and factual support").

The Bank argues that the court clearly erred in concluding that its claim was brought in bad faith because (1) Ms. Smith was properly joined in compliance with the Declaratory Judgment Act and (2) she was properly joined under the Federal Rules of Civil Procedure.  We disagree.

The fact that the Bank complied with the Declaratory Judgment Act and properly joined Ms. Smith as a party under the Federal Rules of Civil Procedure does not contradict the court's finding that the Bank brought the suit knowingly disregarding the Release and without a factual basis for doing so.  Though the Bank was legally within its rights under the Declaratory Judgment Act to bring the claim,

9

and complied with the Federal Rules, the Bank's legal right to bring the claim is "separate and distinct from any consequence it may suffer for executing that right." App. at 857.

The Bank does not contest either subsidiary finding of the court—that it knowingly violated the clear terms of its Release, or that it did so without a subjective belief that Ms. Smith could or would interfere with its foreclosure of the 11 parcels.[1] The district court concluded (and the Bank does not dispute on appeal) that the Bank was "aware of the limitations and restrictions stated in the Release," and brought suit against Ms. Smith despite them. *Id.* at 857 (citation modified). It understood the Release's plain language: it "release[d] and forever discharge[d] Loree Smith" from "all claims . . . of any and every nature whatsoever relating to the Loan." *Id.* at 840. And yet the Bank disregarded that promise.[2] Not only did the Bank knowingly violate the Release by bringing the claim against Ms. Smith; it "lacked an honest belief in the propriety of" its claim because it did so knowing it had no factual basis for seeking the declaration. *Id.* at 857. Both the Bank's own statements and the record reflect that the Bank had no factual basis to believe Ms.

---

[1] Banner Bank provides no record support to explain why it believed or had reason to believe that Ms. Smith had an interest in the 11 parcels. To the contrary, the record shows that Mr. Smith alone held interest in them.

[2] Banner Bank contends that Utah does not punish a party for intentional breach of contract alone. *TruGreen Companies*, *L.L.C.* v. *Mower Bros., Inc.*, 199 P.3d 929, 933 (Utah 2008) ("[A]ny measure of damages that punishes a breaching party is inappropriate."). But the district court found that the Bank's deliberate breach of the Release, alongside its concealment of Deed alterations and its lack of factual basis to bring the claim for declaratory relief, amounted to bad faith.

Smith owned or sought an interest in the 11 parcels. The Bank knew and never disputed that Mr. Smith solely owned those parcels before it brought the action. {*Id.* at 854.} And both the Bank and Ms. Smith understood that any equitable interest Ms. Smith may have in the 11 parcels would not impact the Bank's ability to foreclose on them under the Deed. {*Id.* at 855.} Clear evidence that Banner Bank took this action without a factual basis and with an improper purpose meets the bad-faith exception. *Kuykendall*, 466 F.3d at 1152.

The Bank also contends the district court erred in finding it concealed the alterations uncovered at trial (the whited-out series of numbers and the written-and-erased note on the first page of the Deed). The court made this finding because Banner Bank did not disclose those alterations until the second day of trial—even while it obtained dismissal of Ms. Smith's counterclaims and pursued foreclosure of Mr. Smith's interest in Unit 7.

The Bank argues that these alterations were not concealed because the Deed was (1) attached to the complaint, (2) produced in discovery, (3) used by Ms. Smith's counsel in depositions, (4) disclosed in pretrial disclosures, and (5) recorded with the county office. And it argues that, in any event, the alterations were known by Ms. Smith's counsel for more than four years and were meaningless because they ostensibly did not alter the Deed or its terms.

We are not persuaded. The Bank's first five arguments fail to show error because they do not contest the court's finding that the copy of the Deed produced in each highlighted instance *did not show* the late-discovered alterations. The Bank

alone had access to the original Deed on which those alterations were visible—and no copy, including the copy in the county clerk's office, showed the late-discovered alterations. Nor does the Bank's record citation show that Ms. Smith's counsel knew about the alterations: it reflects only that Ms. Smith's counsel knew about *another*, visible written alteration of "132" on the first page, not any of the alterations discovered on day two of trial. {App. Appx. 1840–41.} As a last resort, the Bank asserts that these late-discovered alterations are meaningless. They may or may not be; the court made no finding as to their meaning. But the uncontested fact remains that the Bank concealed these alterations until the second day of trial, and as a result, Ms. Smith was unable to conduct discovery on their meaning and significance to her claims. And Banner Bank does not rebut the court's finding that the Bank concealed alterations to prevent an appropriate response, "intend[ing] to take unconscionable advantage of [Ms. Smith]." App. 858. The court's finding of concealment further supports its finding of bad faith for prong two of the federal exception—that the Bank brought and pursued this action with an improper purpose. *Kuykendall*, 466 F.3d at 1152.

Next, Banner Bank contests the court's finding that the Bank pursued the foreclosure of Unit 7 in bad faith. The court concluded that it brought and pursued foreclosure in bad faith because it simultaneously concealed the alterations it made or directed to the governing Deed, as discussed above, and pursued the foreclosure and sale of Mr. Smith's interest in Unit 7. This behavior prevented Ms. Smith from responding appropriately to the foreclosure suit.

12

To show clear error, the Bank argues that (1) the complaint shows the Bank never sued to foreclose *Ms. Smith's* interest in Unit 7, (2) the Bank released any interest in the Unit before trial, and (3) the court never issued an order of sale of the Unit. But the Bank's counterarguments do not undercut the court's bad-faith finding. It is undisputed that the Bank attempted to foreclose on only Mr. Smith's interest in Unit 7, not Ms. Smith's interest—and the court did not conclude otherwise. {App. Appx. 852.} Bad-faith still remains: had the Bank not simultaneously pursued foreclosure on Mr. Smith's interest and concealed alterations to the underlying Deed, Ms. Smith could have appropriately responded. She may have canceled the Deed and shortened what became a years-long threat of becoming a joint owner of Unit 7, facing possible partition against a stranger.

Nor does the fact that the Bank *eventually* released its interest in Unit 7 before trial undermine the court's finding of bad faith. That is because the Bank pursued foreclosure and concealed the underlying Deed's alterations for *several years* before releasing its interest in Unit 7. Banner Bank released its interest six years after recording the altered Deed, five years after initiating suit to foreclose Mr. Smith's interest in Unit 7, and only four months before trial. {*Id.* at 839–40, 1295.} Nor does the fact that the court never ordered sale of Unit 7 undermine its bad-faith finding. The court found bad faith because the Bank *pursued* foreclosing Mr. Smith's interest in Unit 7 and simultaneously concealed alterations, not because it successfully foreclosed. The Bank fails to show clear error in the court's finding that the Bank took advantage of Ms. Smith by pursuing foreclosure while concealing

13

alterations to the Deed that could aid Ms. Smith in preventing such foreclosure. That finding further supports the court's bad-faith award—because the Bank pursued this action against Ms. Smith furtively and with improper purpose. *Kuykendall*, 466 F.3d at 1152.

Banner Bank fails to show clear error in the fact findings the court relied on to award Ms. Smith attorneys' fees under the federal bad-faith exception. Those findings demonstrate that Banner Bank pursued declaratory relief against Ms. Smith "without color," because it had no factual basis to seek that relief, and that Banner Bank pursued that relief and foreclosure of Mr. Smith's interest in Unit 7 "wantonly, for purposes of harassment or delay, or for other improper reasons" by (1) knowingly violating its Release Agreement and opposing Ms. Smith's attempts to remove herself from suit, and (2) by concealing its alterations to the Deed and opposing her attempts to cancel it and avoid the results of such foreclosure. *Kuykendall*, 466 F.3d at 1152.[3]

Because we affirm the district court's award of attorneys' fees under the federal bad-faith exception, we need not address the court's alternative award of fees as direct damages.

---

[3] The Bank focuses its challenge to three factual findings that provide evidence of the second prong of the federal bad-faith exception—that the claim was brought and pursued improperly. It does not meaningfully challenge on appeal the court's conclusion that its claim was "without legal or factual basis," *i.e.*, without color, as required by the first prong. Nevertheless, the court did make that finding when it awarded attorneys' fees the first time. *See* App. 854–56.

### C.    *Sufficiency of the Attorneys' Fees Affidavit*

Banner Bank also challenges the reasonableness of the award amount.  It does so based on the court's reliance on the allegedly inadequate affidavit of Ms. Smith's counsel.  Below, the Bank raised most of the same objections, and in response, the court reduced the number of counsel's billed travel hours by half.  That resulted in an $18,000 reduction in the fee award.  On appeal, the Bank argues that the award is still unreasonable because the affidavit (1) lacks specificity, (2) did not exclude time for work performed on claims and defenses on which the Bank prevailed, (3) included counsel's travel time, (4) lumped billable and nonbillable time, (5) appears to be estimated, and (6) includes inadmissible time entries.  But the Bank fails to show that the district court abused its discretion in relying on the affidavit.

Beginning with Banner Bank's arguments about lack of specificity and inappropriate lumping of time (arguments 1, 3, 4, and 5), the district court adequately addressed these concerns.  The district court agreed that counsel's affidavit was not a "model[] of detail" because it grouped together the nonbillable time counsel spent traveling with the billable time he spent participating in proceedings.  App. 1074.  Nevertheless, it concluded that counsel's subsequent clarification that he billed up to eight hours for travel time "provide[d] sufficient information to allow the court to determine" how many hours counsel spent traveling versus participating in the named proceeding.  *Id.*

Next, after deducing counsel's actual travel time, the court concluded that the total time he billed for work while traveling was unreasonable.  It reduced the billed

15

travel time by half because federal law generally prohibits billing for inter-city travel time unless counsel *works* during that travel, and Ms. Smith's counsel did not clearly itemize how much of that travel time he spent working.  *Ramos*, 713 F.2d at 559.  In its discretion, the court halved his billed travel hours.  *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998) ("A district court is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time." (quoting *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995))).  By halving counsel's billed travel hours, the district court addressed the Bank's concerns about the affidavit's lack of specificity (1 and 5) and about billing for non-billable travel time (3 and 4).  The Bank does not explain why the court's response was "arbitrary, capricious, or whimsical, or result[ed] in a manifestly unreasonable judgment."  *United States v. Weidner*, 437 F.3d 1023, 1042 (10th Cir. 2006) (citation modified).

Nor do Banner Bank's objections about the admissibility of portions of the affidavit show that the court abused its discretion.[4]  It argues that the affidavit

---

[4] The Bank also argues that counsel's affidavit did not exclude time for work performed on claims and defenses in which the Bank prevailed.  It did not preserve this argument below in its objection to the affidavit.  {*See* App. Appx. 1003–15.}  "An issue is preserved for appeal if a party alerts the district court to the issue and seeks a ruling."  *Somerlott*, 686 F.3d at 1150.  Banner Bank did raise the issue before the district court awarded fees in *Banner Bank I*, but it abandoned the issue by failing to raise it in its objection to the attorneys' fees affidavit.  The Bank did not preserve the argument, and it does not argue plain error on appeal.  It has waived the issue.  *See United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019).

violates Federal Rule of Evidence 603 because the affidavit does not attest that the time entries are true and correct. But counsel made the statements therein after being "duly sworn upon oath." App. 863. The Bank also argues that the affidavit lacks a foundation regarding how and when the entries were created. But counsel had personal knowledge because he compiled the entries at issue and they chronicled his own time. Finally, the Bank argues that the "probative value of the [a]ffidavit is also outweighed by the unfair prejudice that results to the Bank pursuant to Fed. R. Evid. 403"—but the Bank does not explain why. Aplt. Br. at 54; *see Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999) ("This court . . . will not craft a party's arguments for him.").

Banner Bank has failed to show that the court abused its discretion in determining the reasonableness of attorneys' fees awarded to Ms. Smith.

## III.    Conclusion

For the foregoing reasons, we affirm the district court's grant of attorneys' fees.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

---

Even if Banner Bank did not abandon the issue below or raised plain error on appeal, Ms. Smith's counterclaims were compulsory, and she should not be prevented from recovering attorneys' fees for these claims because she would have been barred from asserting them in a future proceeding. *See Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974) ("A counterclaim which is compulsory but is not brought is thereafter barred.").